UNITED STATES FIDELITY AND GUARANTY COMPANY
*et al. v.* SKINNER.

824

No. 12699.  September 14, 1939.  Rehearing denied October 13, 1939.

*Abrahams, Bouhan, Atkinson & Lawrence,* for plaintiff in error.
*Edward F. Taylor* and *William H. Sanders,* contra.

Atkinson, Presiding Justice.  On June 19, 1937, W. B. Skinner, then residing in Macon, Georgia, was an employee of the Southern Fertilizer and Chemical Company of Savannah, Georgia.  C. C. Maile, then residing in Atlanta, Georgia, was an employee of the same company.  Both employees were traveling salesmen; and in addition to their respective monthly earnings, each was furnished an automobile, and all traveling expenses, including costs of operating the automobile, and reasonable expenses for lodging and eating when away from home on business of the company.  They were supposed to work during the week days and rest on Sundays.  The office of the company customarily closed for week-ends at two o'clock Saturday afternoon, and opened at 9 o'clock the ensuing Monday morning.  W. D. Cook was vice-president of the company, in charge of the office at Savannah.  Maile had authority over Skinner in the territory of their employment.  Cook was accustomed to call Maile and Skinner to come to Savannah over week-ends to discuss sales features of the

company's business. For such purpose Cook previously to Saturday, June 19, called for a conference with Maile and Skinner, to be held at Savannah during the ensuing week-end. In response to that call Maile left Atlanta on Saturday morning June 19, in the automobile furnished to him by the company. At Macon he was joined by Skinner at ten o'clock, and they proceeded to Savannah in the same automobile. They attended to some business along the way, and reached Savannah at 3 o'clock in the afternoon without having had lunch. They parked the car and registered at the Hotel Savannah, intending to go to Paris's place on the Savannah beach road for a sea-food dinner, and afterwards to call on and confer with Mr. Cook. After registering at the hotel, they decided to go to Tybee Beach, eighteen miles from Savannah, and left in the car about four o'clock for Tybee Beach to get a "sea-food dinner, and to see the ocean." There was no office of the company at Tybee Beach, and they had no business there and no object in going there other than to get a "sea-food dinner and see the ocean." That was a reasonable and proper place, and so recognized by the company, for them to go and take dinner at the company's expense. Maile was driving the car, and while running at the rate of about 55 miles per hour a tire blew out, causing the car to turn over and injure both occupants. Skinner died three days later. Cook had not heard of their arrival in Savannah, and did not expect them before Monday morning. They had intended making contact with Cook after dinner, and holding the conference as soon as his convenience would permit. They had previously made such trips to Tybee Beach at the company's expense for such purpose, which the company approved. They had also at week-ends, when not engaged in the company's business, been permitted by the company to use their respective cars about their homes for family or social purposes. The Board of Industrial Relations awarded compensation to the widow of Skinner under the workmen's compensation act, Code, § 114-102. On appeal the superior court sustained the award, and on writ of error the Court of Appeals affirmed that judgment. 59 *Ga. App.* 82. The case came to the Supreme Court on certiorari to the judgment of the Court of Appeals.

■ In other jurisdictions having statutes enacting workmen's compensation laws, not always identical with each other or with the

statute of Georgia, there is a conflict in the decisions on the question of when an injury is compensable under the statutes under which compensation was claimed. The majority opinion rendered by the Court of Appeals in the instant case, relying on Christensen *v.* Hauff, 193 Iowa, 1084 (188 N. W. 851, 853), Walker *v.* Speeder Machinery Corporation, 213 Iowa, 1134 (240 N. W. 725), and similar cases, adopts and applies the view "that a traveling salesman, away from home or headquarters, is in continuous employment, and that an accident to him arises in the course of his employment 'if it occurs while the employee is doing what a man so employed may reasonably do within a time during which he is employed, and at a place where he may reasonably be during that time.'" In the dissenting opinion Judge Sutton cites cases from other jurisdictions, which take a contrary view. In very able and elaborate briefs filed by the attorneys for the respective parties, many other cases are cited which show the conflict of authority. The dissenting opinion by Judge Sutton calls attention to such conflict of decisions, and deems the better view to be with those decisions that run counter to the views expressed by the majority of the Court of Appeals. None of the decisions in foreign jurisdictions are binding on this court, and no effort will be made to distinguish or reconcile any differences between them. Judge Sutton says, in part:

"Before compensation can be awarded legally to a claimant for an injury by accident, it must appear that the accident arose out of and in the course of the employment. Code, § 114-102. . . Injuries sustained by a traveling salesman while traveling by automobile from one town to another on business for his employer are compensable under the workmen's compensation law. *New Amsterdam Casualty Co.* v. *Sumrell,* supra; *Globe Indemnity Co.* v. *MacKendree,* 39 *Ga. App.* 58 (146 S. E. 46) ; *Employers Liability Assurance Corporation Limited* v. *Montgomery,* 45 *Ga. App.* 634 (165 S. E. 903). See also *Mitchem* v. *Shearman Concrete Pipe Co.,* 45 *Ga. App.* 809 (2) (165 S. E. 889).

"Undoubtedly Skinner was in the course of his employment while on the way to attend the business conference in Savannah, and, after his arrival there, if he had been transacting business for his employer or doing anything incidental thereto, or had been on his way to do so and while so engaged had been injured, the claim-

ant would have been entitled to compensation. But the record shows that he had safely reached his destination in Savannah, had located himself as a guest in the Savannah Hotel, and he and Maile were on the way to Tybee Beach, a seaside resort, eighteen miles from Savannah, when he was injured in the automobile accident. There was no official of the company at Tybee for them to see, nor was there any business there for them to transact. Admittedly, they were going there to eat a sea-food dinner and to see the ocean. The business conference with Cook was to be had either on Sunday or Monday morning in Savannah, and until then Maile and Skinner could spend their time as they chose and go where they pleased.

"In *Ocean Accident &c. Cor.* v. *Farr,* 180 *Ga.* 266 (178 S. E. 728), Farr, a steam fitter and plumber, was engaged for his employers in renovating certain boilers in the basement of a building in Savannah, and, in order to eat his lunch during a thirty-minute lunch period, had gone to the first floor of the building to wash his hands, and, while going down the stairs on his way back to the basement to eat his lunch, fell and was injured. The Supreme Court held: 'His preparation for lunch and his eating lunch was his individual affair. It was not a part of his employer's work. Seckinger [the employer] testified that he was not required to eat his lunch in the basement or in the building. The director was authorized to find that the "noon time" was Farr's to employ as he should choose and eat his lunch where he pleased, and that the accident arose out of his individual pursuit and not out of his employment.' . .

"They [Skinner and Maile] could have eaten their meals in Savannah and, so far as the record shows, could have obtained a sea-food dinner there; but instead of doing so they were, when the accident occurred, on an eighteen-mile trip to a seashore resort for the sole purpose of eating a sea-food dinner and to see the ocean. In doing this they were on their own mission, and, therefore, the accident did not arise out of and in the course of their employment. . .

"It has been held in numerous cases, both by the Supreme Court and this court, that a finding upon the issues of fact by the Industrial Board is conclusive as to those issues, if there is any evidence to support it. Many cases are cited by counsel for defend-

ant in error to this effect. But the trip to Tybee was clearly a joint personal venture on the part of Maile and Skinner, and, in my opinion, was such a departure from the master's business as to preclude a recovery of compensation in this case. I think the award of compensation was without evidence to support it, and, therefore, should be set aside."

Since the decision by the Court of Appeals the case of *American Mutual Liability Insurance Co.* v. *Lemming,* 187 *Ga.* 378, 380 (supra), has been decided by this court. That was a case in which the pertinent portions of the evidence were as follows: As to the duties for which claimant was employed the claimant testified: "I suppose they were just anything that came up on the outside and sometimes inside. I fired the boilers and worked in the machine-shop and worked on the houses. I worked at anything." On the same subject the president of the company testified that claimant was "jack of all trades. . . Anything that was required to do around the plant; that is, mechanically, fixing up houses and maintenance, . . cutting the grass, everything." It also appeared that the president of the employer company had a hobby of raising turkeys, which was in no respect a part of the business of the company. The claimant was directed by the president to go into woods adjacent to the mill property and procure poles with which to build a turkey-pen. It was while returning with the poles that the claimant received his injury by coming in contact with the branches of a tree. It was held by this court that the injury did not arise out of and in the course of the employment, and consequently was not compensable. In making the ruling it was said: "Under those circumstances it can not be said that the injury resulted from an accident arising out of and in the course of the employer's business, notwithstanding the testimony of the president of the company that the directors knew that he was raising turkeys and using mill labor in connection therewith; that the employee was to do anything he instructed him to do; that he had authority to direct the employee to do anything he saw fit; that the officers and directors called on Lemming to do 'all their jobs,' and that the odd jobs were not separated from his regular job of keeping the mill and houses in repair."

As clearly brought out by Judge Sutton, the ultimate question is, did the accidental injury to Skinner *arise out of and in the*

*course of his employment,* within the meaning of the Georgia workmen's compensation act (Ga. Laws 1920, p. 167; Code, §§ 114-101 et seq.)? The language of the statute (Code, § 114-102) is: "Injury by accident arising out of and in the course of the employment." Under liberal construction the statute includes injury received in doing an act which the injured employee was employed directly to perform or an act incidental thereto, reasonably necessary in performance of the act he was employed to perform. If in performance of an act which he was directly employed to do, or an act reasonably necessary to be done in order to perform the act he was employed to do, the employee receives accidental injury, such injury is compensable. If the act does not come within either of these classifications, the injury is not compensable. Therefore whether an act comes within either classification is a question which involves the terms of the particular contract of employment. In the instant case the terms of the contract of employment are not fully disclosed by the evidence. Resort must be had to testimony as to fragments of the contract, and acts of Skinner preceding and at the time of the accident. It appears that he was a traveling salesman and collector for an employer in the sale of and collection for fertilizers sold, and had been called to the office of the employer located at Savannah by the vice-president of the company, for a conference in relation to that branch of the business of the company. It further appears that in response to such call he had gone from his residence at Macon to Savannah, and registered at a hotel, the whole trip including lodging and meals to be at the expense of the company, and in an automobile furnished by the company. The accident did not occur during the period in which the employee was traveling to and lodging at Savannah. The accident occurred afterwards, while Skinner and Maile, his immediate and superior coemployee, were riding in the same automobile in which they had come to Savannah, and were going from Savannah to Tybee Beach, a distance of eighteen miles, for the sole purpose of getting a sea-food dinner, and seeing the ocean. The pivotal question therefore is, was he *then* acting in the course of his employment? There was no business of the company at Tybee Beach, and they did not intend to render the company any service there. The company had not expressly ordered them to make such excursion. The company in the past had permitted them to

830

make similar excursions to Tybee Beach at the expense of the company. The grant and acceptance of such privileges, however, were merely optional with the respective parties. Any exercise of such privileges would be for personal pleasure of the recipients rather than performance of a duty owed to the company. The salesmen had come to Savannah on a special call for a conference with the vice-president of the company. It was not essential nor reasonably necessary to that conference nor in furtherance of the company's business that they should eat *a sea-food dinner, or go to Tybee Beach* to get a sea-food dinner, and see the ocean. The former practices of the employees in making such excursions, being merely optional between the parties, would not amount to a contract that they could continue to do so. Neither would they show such custom of trade or business as would justify the conclusion that by implication they became a part of the contract. Code, § 20-704 (3). This principle was decided in *American Mutual Liability Insurance Co.* v. *Curry,* 187 *Ga.* 342 (supra), in regard to workmen's compensation, where it was said that "the gratuitous and permissive riding on the truck by Curry in going forth and back between his home and his place of work by mere favor not in furtherance of the company's business was not such as to justify the conclusion that a right to do so become by implication a part of the contract." The evidence demanded a finding that the injury to Skinner did not arise out of and in the course of his employment, within the meaning of the Georgia workmen's compensation law. Therefore the Court of Appeals erred in affirming the judgment of the superior court, which sustained the award for compensation.

The ruling in headnote 2 does not require elaboration.

*Judgment reversed. All the Justices concur.*