27950. EMPLOYERS LIABILITY ASSURANCE CORPORATION *et al. v.* PRUITT.

DECIDED JULY 13, 1940. REHEARING DENIED JULY 30, 1940.

*Neely, Marshall & Greene,* for plaintiffs in error.
*Talmadge, Fraser & Camp, Irwin & Latimer,* contra.

MacINTYRE, J. This is a workmen's compensation case. George W. Pruitt was employed by the International Correspondence Schools, insured under the Georgia workmen's compensation act by the Employers Liability Assurance Corporation. His regular salary was $18 per week and this was supplemented by $10 per week to cover meals, room, and other traveling expenses, making a total of $28 per week. It appears that the employer sold correspondence courses, and that Pruitt was a traveling salesman in the railroad department; that is, he specialized in selling courses to railroad employees, looked up his own prospects, and used his

own judgment about where he went in his territory. The school allowed him to use his own car instead of the train, and the employer paid him for it so that he could sell to that class of work, that is, stop along the highways and meet people at different sections and contact them as he went along. He contacted the railroad men at all hours of the day and night, whenever he could locate them when they were off of their run. He left his home in Decatur on or about September 1, 1938, on a business trip for his employer, and was en route home on November 8, 1938, when he stopped in Lawrenceville, Georgia (which was in his designated territory), and went into the Ralston Café at approximately 12:30 p. m. The board was authorized to find that upon entering the restaurant Pruitt made inquiry as to the whereabouts of a person (unnamed in the evidence) who was a prospect. He sat down on a stool at the counter and ate lunch. After eating lunch he turned slowly on the stool, lost his balance, fell from the stool and received a broken hip, which contributed to and caused his death. At the time of the injury he was 74 years of age, and had worn an artificial right leg for more than 30 years, but he was in good health and was able to perform his usual duties. Despite the fall and fracture, he insisted on being placed in his car, and he drove himself to his home in Decatur. He died on January 20, 1939. It is admitted that the injury was the proximate cause of his death.

The first hearing of the case was in Lawrenceville, on March 3, 1939. A second hearing was assigned in Decatur on April 7, 1939, for the "purpose of taking additional testimony." At the conclusion of that hearing director Monroe announced that he would assess a penalty of $25 against the insurance company for not filing the employer's first report of the accident with the Industrial Board. He rendered an award in favor of the claimant, the wife of the deceased; ordered a penalty against the insurance company, and ruled that the claimant's attorneys were entitled to a fee of 25 per cent. of all compensation awarded; and that the insurance company should pay all reasonable hospital and doctors' bills etc.

The questions presented are: (1) whether, when Pruitt fell from the stool while eating a noonday meal, his injury arose out of and in the course of his employment; (2) whether under the facts the penalty could be imposed under the Code, § 114-716; and

(3) whether the board had authority, under § 114-417, to assess the attorney's fee of 25 per cent. against the insurance company.

1. We will first consider whether the injury resulting in Pruitt's death arose out of and in the course of his employment. The scope of employment of a traveling man is wider than that of an ordinary employee. *New Amsterdam Casualty Co.* v. *Sumrell,* 30 *Ga. App.* 682, 691 (118 S. E. 786). "It can not be said that the employment is broken by mere intervals of leisure such as those taken for a meal. If an accident happened at such a time, there would be no break in the employment . . unless the workman is doing something wholly foreign to his employment. Acts of ministration by a servant to himself, such as quenching his thirst, relieving his hunger, . . are incidents to his employment and acts of service therein within the workmen's compensation acts, though they are only indirectly conducive to the purpose of the employment. Consequently no break in the employment is caused by the mere fact that the workman is ministering to his personal comforts or necessities . . to procure drink, refreshments, food." 1 Honnold's Workmen's Compensation, 379-384, ·§ 111. In *Railway Express Agency* v. *Shuttleworth,* 61 *Ga. App.* 644 (7 S. E. 2d, 195), the claimant's husband was employed by the defendant company as its special agent who traveled about to investigate loss and damages to shipments handled by the company. He came to Atlanta, Georgia, from Nashville, Tennessee, to make such an investigation and to consult with the defendant's attorneys. It was necessary that he spend a night in Atlanta, and unfortunately chose the Terminal Hotel. The company always paid his expenses on such trips, including hotel lodging. The hotel burned in the early morning of the next day, and he lost his life. In affirming the ruling of the superior court affirming the award of the Industrial Board, holding that the death arose out of and in the course of his employment and allowing compensation, this court said: "A traveling salesman, by reason of his employment, incurs the risk necessary and incident to the requirements of such employment. . . If the work of a traveling salesman or representative of an employer exposes him to the hazards of the highway we can not see why he is not exposed to the same degree and in the same manner to the hazards of hotels and eating places, provided they are normal and necessary incidents to his employment. If an employee is re-

quired by the duties of his employment to be away from his home at night, and his compensation covers the expense necessary and incident to spending the night away from home, and he incurs dangers or perils arising from and incident to such staying at a hotel 'the protection of the compensation act extends' to such employee while so engaged in the service of his employer."

The Industrial Board was authorized to find that the traveling salesman at the time of his injury was out on his itinerary; that the town at which he stopped was within his territory; that he stopped at a café in this town and went into the same for the purpose of procuring information as to the whereabouts of a prospect, and actually attempted to secure this information from the proprietor of the café; that shortly thereafter he sustained the injury which caused his death when he fell from a stool; and that this injury arose out of and in the course of his employment. We think the instant case is not only in principle controlled by the *Shuttleworth* case, but is stronger on its facts in favor of the claimant; for the board was authorized to say that the deceased had gone into the café for the purpose of conducting his business and actually conducted it while in the café. It is distinguishable from *United States Fidelity & Guaranty Co.* v. *Skinner,* 188 *Ga.* 823, and other cases cited by the plaintiff in error.

2. Under the facts as shown in the record, the director abused his discretion in assessing against the insurance carrier a $25 penalty under the Code, § 114-716, which provides, in part "(e) Any such employer who refuses or wilfully neglects to make the report required by this section shall be liable to a penalty of not more than $25 for each refusal or wilful neglect, to be assessed by a director in an open hearing, with the right of review as in other cases. In the event the employer has transmitted the report to the insurance carrier for transmission to the department, the insurance carrier wilfully neglecting or failing to transmit the report shall be liable and shall pay the fine." It appears from the evidence that the secretary of the Industrial Board testified that no employer's report of this accident had been filed. The director thereupon read § 114-716, and a letter addressed to counsel for claimant, from the International Correspondence Schools, which in effect said that the schools had turned the report over to the insurance company, and the duty was on it to file the same with the

board. It having failed to do so, the director ruled "that it was not the intention of the employer to violate the law or wilfully neglect to furnish the report, but that it was incumbent upon the insurance carrier; and in accordance with the section I have read, I hereby assess a penalty of $25 against the Employers Liability Assurance Corporation for failure to make this report to the Industrial Board. You may have the right of review before the full board. If you care to cross-examine the secretary-treasurer, you may do so." The following then occurred: Mr. Greene: "I want to show that I had no notice of any such procedure, and we take the position that the board or the director is without authority to assess a penalty without notice and opportunity to be heard." The director: "I just quoted you the law." Mr. Greene: "We are in this case insisting that we have had no notice and have not had an opportunity to be heard on his phase of the case." The director: "Are there any questions for Mr. Hartley?" Mr. Greene: "I have no questions to ask the secretary-treasurer of the board, for the reason that the director has already passed sentence in the case, and I assume that any questions which I might now ask would have no bearing on the procedure." It thus appears that the director made his ruling, and told the counsel for the defendant insurance company it could appeal, without having first given it an opportunity to be heard. This we think was error; and the insurance company is entitled to a deduction of $25 from the award rendered.

3. The third exception complains of the following ruling of the director, affirmed and adopted by the board as its award: "The employer and/or insurance carrier will pay to the law firm of Talmadge, Fraser & Camp, claimant's counsel, as reasonable attorney's fees, 25 per cent. of all compensation herein awarded the claimant, which amount shall be paid to said attorneys in a lump sum; and the employer and/or insurance carrier will take credit for the said payment on the compensation herein awarded at the end of the compensation period, with interest at 5 per cent. on all compensation not yet payable under the terms of this award. The employer and/or insurance carrier will pay immediately, in accordance with the terms of this award, all accrued compensation, attorney's fees, hospital and medical expenses, and penalty." The plaintiff in error contends that at the time of this lump sum award by the director, 26 weeks had not passed, and that until the regular weekly

payments continued for at least 26 weeks a lump-sum settlement . could not be made under the Code, § 114-417. It further contends that the director did not have authority to award the attorney's fees in a lump sum, and "take credit for such lump sum payment at the end of the compensation period." Under the ruling of the Supreme Court in answer to the questions certified to it by this court (*Employers Liability Assurance Corporation* v. *Pruitt,* 190 *Ga.* 479, 9 S. E. 2d, 641), this decision of the superior court with reference to this portion of the award is affirmed.

4. It follows from what has been said that the evidence authorized the finding of the director, which was affirmed by the board, that the injury from which the claimant's husband died arose out of and in the course of his employment. The judge of the superior court did not err in affirming the award in favor of the claimant, and in affirming the ruling allowing the claimant's attorneys a lump-sum award of 25 per cent. of all compensation awarded. However, the imposition of a penalty of $25 against the defendant company was unauthorized. The judgment is affirmed, with the proviso that the penalty of $25 be written off the award, and that the issue as to assessment of a penalty, and this issue alone, be referred to the board for a hearing and determination according to the Code, § 114-716, after due notice of and reasonable opportunity for such hearing is given to the insurance carrier.

*Judgment affirmed, with direction. Broyles, C. J., and Gardner, J., concur.*

### ON MOTION FOR REHEARING.

MacINTYRE, J. The plaintiff in error contends that the ruling in the instant case is in direct and irreconcilable conflict with the decision of the Supreme Court in *Ocean Accident & Guarantee Co.* v. *Farr,* 180 *Ga.* 266 (178 S. E. 728). That case is distinguishable from the instant case on its facts. Among other things, the employee in the instant case was a traveling salesman, whereas in the *Farr* case he was not; the employee in this case was about his master's business when injured (was attempting to locate a certain person), whereas in the *Farr* case such evidence did not appear; and in the instant case the employee was on the road traveling, and was in a different town from the one in which he lived at the time of his injury, and the employer paid for the employee's meals while on the road; whereas in the *Farr* case the employer did not. Both

cases turned on issues of fact. In the instant case the board was authorized to find in favor of the claimant; in the *Farr* case in favor of the employer; and this court can not interfere. The cases are clearly distinguishable. Nor did the board abuse its discretion, as urged by the plaintiff in error, in awarding the lump-sum attorney's fees.

*Rehearing denied. Broyles, C. J., and Gardner, J., concur.*