THORNTON *v.* HARTFORD ACCIDENT AND INDEMNITY
COMPANY *et al.*

*James C. Howard Jr.,* for plaintiff.

Neely, Marshall & Greene and *T. Elton Drake,* for defendants.

WYATT, Justice. The only question presented is, whether the accidental injury sustained by the employee arose "out of and in the course of" his employment within the meaning of the Code, § 114-102. "An accident arises 'in the course of employment,' within the meaning of the workmen's compensation act, when it occurs within the period of the employment, at a place where the employee reasonably may be in the performance of his duties, and while he is fulfilling those duties or engaged in doing something incidental thereto. . . An accident arises 'out of' the employment when it arises because of it, as when the employment is a contributing proximate cause. This and the conditions stated above must concur before the act can apply." *New Amsterdam Casualty Co.* v. *Sumrell,* 30 *Ga. App.* 682 (118 S. E. 786); *Em-*

*ployers Liability Assurance Corp.* v. *Montgomery*, 45 *Ga. App.* 634 (165 S. E. 903) ; *Liberty Mutual Insurance Co.* v. *Mangham*, 56 *Ga. App.* 498 (193 S. E. 87). The words "in the course of" refer to the time, place, and circumstances under which the accident occurs. The employee in the instant case, at the time of the injury, was returning to a hotel (where he had previously registered) from a meal at a café almost directly across the street from the hotel; and he was doing something which a man employed as a traveling salesman may reasonably do within the time he is employed and at a place where he might reasonably be during that time. The fact that he had left the hotel and gone across the street for a meal would not necessarily preclude the relationship of employer and employee, nor take him outside the scope of his employment.

In *Employers Liability Assurance Corp.* v. *Pruitt*, 63 *Ga. App.* 149, 151 (10 S. E. 2d, 275), where a traveling salesman was injured by falling from a stool in a café where he had gone to eat a meal and procure information about a prospect, the court said: "The scope of employment of a traveling man is wider than that of an ordinary employee. *New Amsterdam Casualty Co.* v. *Sumrell*, 30 *Ga. App.* 682, 691 (118 S. E. 786). 'It can not be said that the employment is broken by mere intervals of leisure such as those taken for a meal. If an accident happened at such a time, there would be no break in the employment . . unless the workman is doing something wholly foreign to his employment. Acts of ministration by a servant to himself, such as quenching his thirst, relieving his hunger . . are incidents to his employment and acts of service therein within the workmen's compensation acts though they are only indirectly conducive to the purpose of the employment. Consequently no break in the employment is caused by the mere fact that the workman is ministering to his personal comforts or necessities . . to procure drink, refreshments, food.' 1 Honnold's Workmen's Compensation, 379-384, § 111. In *Railway Express Agency* v. *Shuttleworth*, 61 *Ga. App.* 644 (7 S. E. 2d, 195), the claimant's husband was employed by the defendant company as its special agent who traveled about to investigate loss and damages to shipments handled by the company. He came to Atlanta, Georgia, from Nashville, Tennessee, to make such an investigation and to consult with the

defendant's attorneys. It was necessary that he spend a night in Atlanta, and unfortunately he chose the Terminal Hotel. The company always paid his expenses on such trips, including hotel lodging. The hotel burned in the early morning of the next day, and he lost his life. In affirming the ruling of the superior court affirming the award of the Industrial Board, holding that the death arose out of and in the course of his employment and allowing compensation, this court said: 'A traveling salesman, by reason of his employment, incurs the risk necessary and incident to the requirements of such employment. . . If the work of a traveling salesman or representative of an employer exposes him to the hazards of the highway, we can not see why he is not exposed to the same degree and in the same manner to the hazards of hotels and eating places, provided they are normal and necessary incidents to his employment. If an employee is required by the duties of·his employment to be away from his home at night, and his compensation covers the expense necessary and incident to spending the night away from home, and he incurs dangers or perils arising from and incident to such staying at a hotel the protection of the compensation act extends to such employee while so engaged in the service of his employer.' "

By the very nature of his work, a traveling salesman is not usually restricted to working on a schedule of hours. His employment is broader in scope than that of ordinary employees; his hours are more irregular, and usually longer, than those of general employees working in a fixed location; his conduct of his duties is of necessity left largely to his discretion; and his acts of ministration to himself, such as eating a meal, because of the nature of his work, are not usually limited to a certain period, or periods, of time daily. Consequently, we think, in a case involving an injury to a traveling salesman while going to or from, or while eating, a meal, such a strict interpretation of the phrase, "arising out of and in the course of the employment," as is sometimes made in cases involving employees injured during a regular noon hour, or similar periods, is too limited. In the latter class of cases the injuries are received during a definite period set apart as belonging exclusively to the employees, during which they may go where they wish and do what they please, subject to no orders from their employers and freed from all duty or responsibility with reference

to their employment; and their employers do not usually pay the expenses of their meals.

A traveling salesman is taken away from his home or headquarters by his employment; and, because of the nature of his work, he usually can not return home each night. He must of necessity eat and sleep in various places in order to further the business of his employer; and the employer recognizes these necessities and usually pays the expenses of his lodging and meals, as was done in this case. While lodging in a hotel or preparing to eat, or while going to or returning from a meal, he is performing an act incident to his employment, unless he steps aside from his employment for personal reasons. Such an employee is in continuous employment, day and night. This does not mean that he can not step aside from his employment for personal reasons, or reasons in no way connected with his employment, just as might an ordinary employee working on a schedule of hours at a fixed location. He might rob a bank; he might attend a dance; or he might engage in other activities equally conceivable for his own pleasure and gratification, and ordinarily none of these acts would be beneficial or incidental to his employment and would constitute a stepping aside from the employment. The eating of meals, while a pleasure indulged in by a traveling salesman and all mankind, is as necessary to the continuance of his duties as the breath of life; and where his duties take him away from his home, his acts of ministration to himself should not—and we believe do not—take him outside the scope of his employment, so long as he performs these acts in a normal and prudent manner. Such activities, the performance of which are necessary to his health and comfort, while in a sense personal to himself, are nevertheless incidents of his employment and acts of service therein within the meaning of the workmen's compensation act, although only remotely and indirectly conducive to the object of the employment.

This case is differentiated on its facts from *United States Fidelity &c. Co.* v. *Skinner,* 188 *Ga.* 823 (5 S. E. 2d, 9), since this court in the latter case was dealing with a traveling salesman who was traveling approximately eighteen miles from Savannah (where he had gone to work) to "eat a sea-food dinner and to see the ocean." In the *Skinner* case, the court said: "They [Skinner and Maile] could have eaten their meals in Savannah, and, so far as the record

shows, could have obtained a sea-food dinner there; but instead of doing so they were, when the accident occurred, on an eighteen-mile trip to a seashore resort for the sole purpose of eating a sea-food dinner and to see the ocean. In doing this they were on their own mission, and, therefore, the accident did not arise out of and in the course of their employment." It was not held in the *Skinner* case that a traveling salesman is necessarily outside the scope of his employment while going to or from, or while eating, a meal.

Counsel for the respondents urge that a traveling salesman is no longer in the course of his employment when his usual duties for the day are completed. With this view we can not agree. We think the sounder rule to be that expressed by the Court of Appeals in the *Shuttleworth* case, supra, where the court said: "We are unwilling to say that an employee who is required to be away from home about the business of his employer will not be allowed compensation for an injury which occurs by reason of the fact that he has to eat or sleep during that time. Proper food and proper rest are necessary and incidental to the performance of the labor required. . . This is not a case where the employee departed on an independent venture of his own, as in the *Skinner* case, supra, and thus disassociated himself from the business of the master. It has been repeatedly held by the courts of this State that the master is not liable for the tort of the servant who steps aside from his employment, engages in an independent venture of his own, and in such venture injures a third person. A traveling salesman, as in the *Skinner* case, who goes to a resort, not about the business of his employer, but solely for his own pleasure and amusement, is not engaged in the business of his employment. It does not follow that when he is eating or sleeping in the usual, regular, and accepted manner incident to the performance of his duties as a traveling representative of his employer, he thereby disassociates himself from his employment."

In the majority opinion of the Court of Appeals in the instant case, it is said: "So far as the record shows, the deceased could have eaten in the hotel, or on the same side of the street on which it was situated, or at some other place and without exposing himself to the perils of crossing a wet and slippery street. To hold that there was a causal connection between the employment and the injury in this case, which is necessary to sustain the award,

would be the equivalent of holing that a traveling salesman while away from home or headquarters, is in continuous employment, and that any accident he may suffer arises out of and in the course of his employment." With this statement we can not wholly agree. The record fails to show that there was any place in the hotel, or outside the hotel, closer to the hotel than the café in which the decedent ate, where he could have obtained a meal. And even if the evidence had shown these conditions to exist, we think this would have made no material difference in the relationship existing at the time of the accident. To hold that there is a distinction between a traveling salesman who eats in a hotel, or on the same side of the street on which the hotel is situated, and one exercising a discretion by eating across the street, is making too fine a distinction; and a ruling that there was a causal connection between the employment and the injury in this case is not the equivalent of holding that "any" accident a traveling salesman may suffer arises out of and in the course of his employment. There is no evidence showing that the contract of hire required the decedent to eat in a hotel, or on the side of the street where the hotel was located; and, on the other hand, the stipulated facts show that it was customary for the decedent, while staying in Athens, to eat in the café where he had eaten just prior to the accident; and the record shows that the employer paid his expenses.

Under the undisputed facts, a finding by the State Board of Workmen's Compensation that the accidental injury arose in the course of the decedent's employment was authorized, and we think demanded. It has been so repeatedly held that where there is any competent evidence to sustain a finding by the board such finding is conclusive and binding on a reviewing court, that no citations are deemed necessary.

Did the accidental injury arise "out of" the employment? The words "arising out of" mean that there must be some causal connection between the conditions under which the employee worked and the injury which he received. The causative danger must be incidental to the character of the employment, and not independent of the relation of master and servant. The accident must be one resulting from a risk reasonably incident to the employment. And a risk is incident to the employment when it belongs to, or is connected with, what a workman has to do in fulfilling his contract

of service. "A risk may be incidental to the employment when it is either an ordinary risk directly connected with the employment or an extraordinary risk which is only indirectly connected with the employment owing to the special nature of the employment." Bolos *v.* Trenton Fire Clay Co., 102 N. J. L. 479 (133 Atl. 764).

The decedent was injured by slipping on a wet street. The very nature of his employment carried him upon the highways and streets. If he had suffered an injury while driving an automobile by reason of a puncture of a tire, or by reason of the skidding of the car on a wet highway, could it reasonably be said that such an injury did not arise out of his employment, although such a hazard is one shared by all travelers by automobile? We think not, because the character of the work would require the employee's presence on the highway and would subject him to these hazards; and in this case, by the nature of the decedent's work, he was carried upon the highways and streets and subjected to the usual hazards there encountered.

The instant case is controlled in principle by the ruling in *New Amsterdam Casualty Co.* v. *Sumrell,* supra, where a traveling salesman was killed when his automobile overturned after colliding with a dog. The court there said: "It is insisted that an accident of this character is one common to the entire traveling public, and is not a risk so peculiar to the employment as to come within the provisions of the act. Much has been said by the courts upon the subject of street and highway accidents, and in some jurisdictions this contention would likely be upheld. But the weight of authority and the better reason, we think, is against it. The compensation acts have been generally held not to authorize an award in case of injury or death from a peril which is common to all mankind or to which the public at large is exposed; but where the duties of the employee entail his presence or travel upon the highway, the claim for an injury there occurring is not to be barred because it results from a risk common to all others upon the highway under like conditions, unless it is also common to the general public without regard to such conditions, and independently of place, employment, or pursuit. See 28 R. C. L. 804, § 93; also the cases cited below. If the work of an employee or the performance of an incidental duty involves an exposure to perils of the highway, the protection of the workmen's compensation act extends

to the employee while he is passing along the highway in the performance of his duties. Katz *v.* State Industrial Commission, 232 N. Y. 420 (134 N. E. 330, 23 A. L. R. 401). 'Where a workman is sent into the streets on his employer's business, whether habitually or occasionally, and whether on foot or on a bicycle, or on an omnibus or a car, and he meets with an accident by reason of a risk of the streets to which his employment exposes him, the accident arises out of as well as in the course of his employment; and it is immaterial that the risk which caused the accident is one which is shared by all members of the public using the streets under like conditions.' Dennis *v.* White (England), 197 A. C. 479, 15 N. C. C. A. 294." See, to the same effect, *Globe Indemnity Co.* v. *MacKendree,* 39 *Ga. App.* 58 (146 S. E. 46), affirmed by this court on certiorari (169 *Ga.* 510, 150 S. E. 849), where an award of compensation was upheld in a case involving an accidental injury to a traveling employee by reason of a tree being blown down by the wind across the automobile in which he was riding.

It seems to be the general rule that injuries resulting from exposure to conditions due to the weather or natural elements, such as heat, cold, ice, rain, snow, or lightning, are usually classed as risks to which the public in general is exposed, and do not come within the purview of the workmen's compensation acts, though the injured person, at the time he receives his injury, may have been discharging duties incident to, and in the course of, his employment. While recognizing the general rule stated, there are many cases which the courts hold are not governed by it, or that are controlled by well-recognized exceptions to such general rule; and we believe the instant case to be such an exception. Where the employment of the injured person requires him to travel upon the streets and highways, and he is in the pursuance of the duties of his employment, or something incident thereto, an ordinary risk thereby encountered (such as slipping on a wet street) is incident to such employment, though the injury may have resulted from conditions produced by the weather, to which persons generally in that locality might be exposed. Where the duties of the employee require him to travel and visit different places in order that he may discharge the duties of his employment, his place of work is thereby enlarged or extended to include all the places to which he necessarily goes to discharge his duties, or something

incidental thereto; and, while the conditions produced by the weather may, in a sense, affect all alike in the particular vicinity, the fact remains that a person so employed is much more exposed to such hazards than the public generally, because of the duties enjoined upon him by his employment and the place or places to which he must necessarily go in the discharge of his duties, or something incidental thereto. See, in this connection, Larke *v.* John Hancock Mutual Life Ins. Co., 90 Conn. 303 (97 Atl. 320, L. R. A. 1916E, 584); McManaman's Case, 224 Mass. 544 (113 N. E. 287); State ex rel. Peoples Coal &c. Co. *v.* District Court, 129 Minn. 502 (153 N. W. 119, L. R. A. 1916A, 344); Foley *v.* Home Rubber Co., 89 N. J. L. 474 (99 Atl. 624). The decedent's injury having occurred by reason of a risk or hazard of the streets, and his duties being such as to carry him upon the streets, the finding by the State Board of Workmen's Compensation that the accidental injury arose out of the employment was authorized, and we think demanded, since the facts were undisputed. The facts being undisputed, whether the injury arose out of and in the course of the employment is a question of law, with respect to which we find ourselves constrained to disagree with the judgment of the Court of Appeals. *Judgment reversed. All the Justices concur.*