34106.   FIDELITY & CASUALTY COMPANY *et al.*
*v.* ROBERTS.

Decided July 11, 1952.

*Pittman, Hodge & Kinney,* for plaintiffs in error.

*T. Elton Drake, R. F. Chance, J. T. Pope Jr., John M. Williams,* contra.

Gardner, P.J.   1. The record in this case is quite a lengthy one, consisting of 178 pages.   The evidence is somewhat volu-. minous.   We do not think it necessary, or practical, to go into it in extensive detail.   The only contention in the case is whether the accident arose out of and in the course of employment.   There seems to be no difference between counsel as to the law.   The only question is whether the facts justify the award.   The deceased was employed by Belcraft Chenille Inc. of Dalton, Georgia, as general supervisor .over the mechanical

equipment. There was an affiliation between that company and the Dixie Belle Company, located in Calhoun, Georgia. The deceased lived in Calhoun, Georgia. He had wide and varied authority. He was in charge of all machinery and equipment and all maintenance at both plants. He was subject to call at all hours, day and night, and always responded. He purchased the gas and oil for his automobile and charged it to the plants under his control. He was required to travel to and from Dalton. Much of his time was spent in going to and from the town, buying parts and machinery and doing repair work. He filled in his own time card. It was within his own discretion as to where he should and did go in the performance of his duties. On the day of the accident, which caused his injury, at about 6 p.m. (he was killed at about 7 p.m.) he was at the plant in Dalton, receiving telephone calls and instructing an employee regarding the oil generator. Before that he had been to Chattanooga, Tennessee, in the interest of his employer.

The board was authorized to find, and did find as a matter of fact, that the contract of the deceased included transportation to and from his home in Calhoun, Georgia, where one of the plants was located. The evidence reveals other duties, which the deceased performed on behalf of his employer on the day when he was killed. On the day of the injury the deceased had been purchasing a television aerial and a television set. This was charged to his employer. The record does not reveal clearly just whether or not the television set and aerial were purchased for individual use, or whether or not the deceased purchased it for himself, or someone else. The deceased had the authority to make purchases and charge the same to his employer. His authority in this regard was never questioned. The record reveals that after the deceased had left the plant and was on his way towards his home, the car was wrecked. It was the opinion of some of the witnesses that the protruding aerial extending from the motor vehicle in which the deceased was riding (and it was his car) for some cause struck the super-structure of the steel bridge, causing the death of the deceased.

2. Is there any competent evidence to support the award? If so, this court is without authority to disturb the award. See *Liberty Mutual Ins. Co.* v. *Blackshear*, 197 *Ga.* 334 (28 S. E. 2d,

860). Under Code § 114-102 an accident arises out of the employment, when it arises because of it, as when the employment is a contributory proximate cause. We think that the employment of the deceased here is somewhat analogous to that of a traveling salesman. A traveling salesman enjoys the beneficial purposes of the Workman's Compensation Act and his relationship is distinguished from the general relationship which exists between employer and employee. The Supreme Court in *Thornton* v. *Hartford Accident &c. Co.*, 198 Ga. 786, 789 (32 S. E. 2d, 816), said: "By the very nature of his work, a traveling salesman is not usually restricted to working on a schedule of hours. His employment is broader in scope than that of ordinary employees; his hours are more irregular, and usually longer, than those of general employees working in a fixed location; his conduct of his duties is of necessity left largely to his discretion; and his acts of ministration to himself, such as eating a meal, because of the nature of his work, are not usually limited to a certain period, or periods of time daily. Consequently, we think, in a case involving an injury to a traveling salesman, while going to or from, or while eating a meal, such a strict interpretation of the phrase, 'arising out of and in the course of the employment,' as is sometimes made in cases involving employees injured during a regular noon hour, or similar periods, is too limited. . . Such an employee is in continuous employment day and night." Such was the employment of the deceased in the instant case, and all the evidence is without dispute as to that view. We have read all the authorities called to our attention by able counsel for the plaintiffs in error, and none of them hold contrary to what we now rule. We see no good reason to make an effort to distinguish those cases from the case at bar. There is simple competent evidence to sustain the award. If it be conceded that the purchase of the television aerial and set was for the benefit of the deceased, there is no requirement under our law that the employee at the time of the injury must have no other objective than the business of the employer, under the facts of the instant case. See *Hartford Accident &c. Co.* v. *Welker,* 75 Ga. App. 594 (44 S. E. 2d, 160).

The court did not err in affirming the award of the lower court.

*Judgment affirmed.   Townsend and Carlisle, JJ., concur.*