39676.   ZURICH INSURANCE COMPANY et al. v. ZERFASS.

DECIDED OCTOBER 4, 1962.

*Woodruff, Latimer, Savell, Lane & Williams, John M. Williams,* for plaintiff in error.

*Ward, Brooks & Williams, Cullen M. Ward, Osgood O. Williams,* contra.

RUSSELL, Judge. █ Plaintiff in error first contends that the evidence demands a finding the deceased's injury was the result of his wilful misconduct in driving his automobile while under the influence of intoxicants. In this connection it appears that Zerfass and his fellow employee, Rankin, on arrival at Spartanburg first registered at a motel on the western outskirts of the city, attended to the company business which had brought them there, returned to the motel about 6 p.m., discussed business and

had five to seven drinks of Bourbon and Coca-Cola, and about 9 p.m. inquired about a restaurant where they could get a steak supper. They were advised that the restaurant across the street served short orders and that they could breakfast there, but were recommended to a restaurant in the north part of town for the steak. Zerfass, attempting to follow directions, lost his way. Exactly how the car overturned does not appear, but Rankin remembered the sound of gravel and that he threw his hands in front of his face in the apparent knowledge they were about to hit something. Rankin testified he and Zerfass had frequently had drinks together; that on this occasion he noticed nothing unusual about him; he appeared to have his faculties about him; it was customary for him to have several drinks at night, that as to whether the accident would have happened without the drinking, "that is a hard question to answer, but from past experience of my own drinking and my personal opinion if we hadn't been drinking the accident might not have happened, but that doesn't necessarily mean drinking was the cause of it."

"The burden was upon the employer to establish the fact that the death of the claimant's husband was due to his intoxication. It is not sufficient to authorize a finding that the employee's death is due to intoxication to show merely that he was intoxicated. It is essential, in order to constitute a bar to compensation, that his death was caused by his intoxication. The intoxication must have been the proximate cause of his death. *Shiplett v. Moran,* 58 Ga. App. 856 (200 SE 449)." *General Acc. Fire &c. Co. v. Prescott,* 80 Ga. App. 421 (2) (56 SE2d 137) ; *Ocean Accident &c. Co. v. Lovern,* 90 Ga. App. 708, 712 (83 SE2d 862). Except for hearsay evidence, which has no probative value even when admitted without objection (*Crawley v. Selby,* 208 Ga. 530, 67 SE2d 775) there is no indication in the record as to how the wreck occurred and whether it was due to the driver's fault or otherwise. Further, the question of whether, if the employee was intoxicated, this proximately caused his death so as to be a bar to compensation is an ultimate question of law as to which a non-expert witness has no right to express an opinion, that being for the fact-finding body. *Morgan v. Bell,* 189 Ga. 432 (5 SE2d 897). A question of fact remained as to whether the defendants had carried the burden of proving that the amount of liquor the de-

ceased had drunk was the proximate cause of his injury and death, and the finding on this issue will not be disturbed.

■ It is next contended that the injury did not arise out of and in the course of the employment, for the reason that the employee, after returning to the motel where the parties planned to spend the night preparatory to completing their business the next day, was in search of supper, an errand purely personal to himself, at the time of the accident. There was testimony that it was necessary to cross town to go from the motel to the recommended restaurant, but that there were numerous restaurants nearer to the motel, including one across the street. The evidence, however, fails to show that the men were recommended to any nearer restaurant where they could obtain supper, except for short orders, and it shows that they were personally unfamiliar with the city. Applying the settled rules that the act in the course of which the accident arose must be one the employee is directly employed to do *or* one reasonably necessary to be done in order to perform the act he was employed to do (*U. S. Fidelity &c. Co. v. Skinner,* 188 Ga. 823, 829, 5 SE2d 9), and that "while lodging in a hotel or preparing to eat, or while going to or returning from a meal [the traveling representative of the company] is performing an act incident to his employment, unless he steps aside from his employment for personal reasons" (*Thornton v. Hartford Acc. &c. Co.,* 198 Ga. 786, 790, 32 SE2d 816), we feel that the board properly held such a person, a highly paid executive on travel allowance and expense account, whose duties of employment required him to remain in Spartanburg overnight, was not restricted to eating his meals at the nearest restaurant to his lodgings geographically, but had a right to elect, within reason, the restaurant of his choice within the environs of the city. *Railway Exp. Agency v. Shuttleworth,* 61 Ga. App. 644 (7 SE2d 195), cited with approval in *Thornton,* distinguishes *Skinner* on the basis that there the salesman, who went from Savannah to Tybee Beach, was in fact taking a trip to a resort for his own pleasure and amusement. No such facts appear here. *Thornton* establishes that for one on such a mission, and under such a contract of employment, going to a restaurant is reasonably incident to the employment, and the restaurant need not be as a matter of fact that one nearest the place of lodging. A stranger in a city

going to a restaurant to which he is recommended and directed is not as a matter of law deviating from his employment even though the restaurant is five or six miles away, and even though other eating places (to which he is not recommended) lie nearer his place of lodging in a case such as this where eating his meals is reasonably incident and necessary to his employment.

■ The third contention is that there is no evidence to support the finding that the Spartanburg accident proximately contributed to the employee's death when the rule excluding hearsay evidence is properly applied. Three medical witnesses testified; their testimony is not in conflict, and all were of the opinion that the accident in Spartanburg produced brain damage which proximately contributed to the death of the deceased following surgery, and except for which he would have been able to withstand the surgery. There is testimony of massive brain damage at the time of the accident followed by disorientation with impaired mental and abnormal neurological responses; opinion testimony that death resulted from cerebral infarction and that the blood clot did not arise from the heart area but from the brain itself. Dr. Jeffords, who did not see the deceased after he left the hospital in Spartanburg, stated: "It would be possible that his death would be caused by brain injury in addition to the further complications of cardiac catheterization and cardiac surgery." Dr. Minor, who participated in the surgery and autopsy, stated as his opinion that the damage to brain tissue resulting in the cerebral insufficiency causing his death after the added strain of surgery resulted from the automobile accident of April 7, and that had Zerfass not received this brain injury he would have lived after the surgery was performed. He also stated that he had at his disposal the history of the wreck and clinical findings in Spartanburg; that his opinion of the cause of death was based on actual post-mortem examination coupled with the clinical picture before death, and that taking away the summary of previous findings, his opinion would be the same. Dr. Hopkins testified that the death was caused by cerebral insufficiency, which could have been, and in his opinion was, caused by the injuries received in the automobile accident based on the fact that, considering the accident as a first period of stress and the surgery as a second, "since he had tolerated tremendous

stress the first time, coming out only with cerebral insufficiency, if the second time had been the first time . . . he should have been able to survive it. But if you have cerebral insufficiency and have this additional stress, he may not survive, and again I say it is our opinion this is probably what actually happened."

In general, where a medical expert gives an opinion involving diagnosis of injury and cause of death, to the extent that the facts on which the opinions are based are not the result of the witness' own examination, they should be given him from other testimony in the record in the form of a hypothetical question. Opinion testimony based merely upon records and case history furnished the witness by other doctors and not a part of the evidence in the case is objectionable. See 98 ALR 1109, 1112. The error may be rendered harmless, as to matters of fact, where such facts are proved by another witness. *Gossett v. State*, 203 Ga. 692 (7) (48 SE2d 71). The evidence in this case establishes that the decedent suffered both brain damage, including cerebral lacerations and cerebral concussion, and chest compression with probable cardiac trauma at the time of the automobile accident which resulted immediately in mental and neurological impairment, and the autopsy established as a contributing cause of death extensive brain tissue morbidity caused prior to the time of surgery or catheterization but consonant with the time of the accident and the extent of the head injuries at that time. While Dr. Minor agreed to a question on cross-examination that his opinion was "based on the fact that prior to the catheterization there would be similar paralysis and similar neurological changes that recurred immediately following catheterization," his further answer narrowed the opinion to "a man who has evidence of spinal fluid coming out of his ear in the accident, and this was a basal skull fracture which indicated brain damage," plus the fact that in his experience the possibility of the cerebral insufficiency resulting from catheterization alone "would be exceedingly remote."

An award based in part, or very probably so, on illegal findings from the evidence, must be reversed. *American Mut. Liab. Ins. Co. v. Kent*, 71 Ga. App. 453 (2) (31 SE2d 81). But where it does not appear that the award was based on an erroneous legal theory, and where there is sufficient competent evidence to sus-

tain it, the admission of hearsay evidence is not a ground for reversal. *Pruitt v. Ocean Acc. &c. Corp.,* 48 Ga. App. 730 (173 SE 238); *Hartford Acc. &c. Co. v. Hillhouse,* 73 Ga. App. 122 (35 SE2d 603); *General Acc. Fire &c. Corp. v. Teal,* 100 Ga. App. 314 (111 SE2d 113); *Troup County v. Henderson,* 104 Ga. App. 29 (121 SE2d 65). It does not appear that the opinion of the medical experts was factually based on erroneous hearsay communications that the employee had undergone a paralysis syndrome at the time of the automobile accident, but it went beyond that to the proven facts that he had suffered brain damage, disorientation, and cerebral infarction at that time. Taken as a whole, it leaves no doubt at all but that, in the opinion of all the doctors, death would not have ensued from the operation except for the overlay of brain injury received in Spartanburg.

The Judge of the Superior Court of Fulton County did not err in affirming the award.

*Judgment affirmed. Carlisle, P. J., and Eberhardt, J., concur.*