### 40703. HARTFORD ACCIDENT & INDEMNITY COMPANY et al. v. SOUTHER et al.

PANNELL, Judge. 1. "There is no requirement in our [Workmen's Compensation] law that the employee at the time of the injury must have no objective other than the service of the employer." *Travelers Ins. Co. v. Bailey,* 76 Ga. App. 698 (2) (47 SE2d 103); *U.S. Fidelity &c. Co. v. Croft,* 93 Ga. App. 114 (3) (91 SE2d 110). If an employee, while engaged in the business of his master, makes a slight deviation for ends of his own, the master remains liable when the act was so closely connected with the master's affairs, that though the employee may derive some benefit from it, it may nevertheless be fairly regarded as arising out of and in the course of his employment. *Pike v. Maryland Cas. Co.,* 107 Ga. App. 49, 51 (129 SE2d 78); *U.S. Fidelity &c. Co. v. Croft,* 93 Ga. App. 114 (2), supra; *Fidelity & Cas. Co. v. Roberts,* 86 Ga. App. 472, 474 (71 SE2d 718).

2. Where the employee steps aside from his employer's business to do some act of his own, not connected with his employer's business, the relationship of employer and employee, or master and servant, is, as to that act, completely suspended, and an accident occurring at that time, resulting in injury to the employee, does not arise out of the employment within the meaning of the Workmen's Compensation Act. However, the incident necessary to constitute a break in the employment must be of a *pronounced character*. Shoffler v. LeHigh Valley Coal Co., 290 Pa. 480 (139 A 192). Service to the employer is not interrupted when for a *brief interval* the employee performs a personal errand not forbidden. Smith v. University of Idaho, 67 Idaho 22 (170 P2d 404).

If an employee, while doing something in the interest of his employer, is simultaneously engaged in an act personally beneficial to himself, the service to the employer is not broken, and any injury received by him at that time as the result of the ordinary exposures of his employment, is an injury arising out of and in the course of his employment, and, particularly so where the cause for the employee's engaging in such act personally beneficial to himself is the reasonable result of his employment.

3. It follows, therefore, that where, as in the present case, an employee whose duties require him to take calls for and operate a wrecker during the night hours during the employer's absence, answers a call to tow a disabled car to a certain location, and the employee, while engaged in securing the tow to the wrecker, loses a ring from his finger, then while carrying the tow to its destination realizes the loss, then after carrying the tow to its destination returns to the place where he lost the ring which was on the route back to the station, parks the wrecker off the highway on its left side of the road with its lights burning and its red blinker on, and while looking for his ring off the pavement to the left of and a few feet from the wrecker, is struck and killed by an automobile which came from the direction the wrecker was facing, such facts authorize a finding that the death of the employee arose out of and in the course of his employment. In considering what is meant by "deviation," we usually and rightly think of the term as a temporary severance of the master-servant relationship. Here the employee was wearing

a ring which was a part of his personal apparel. He lost the ring while in the course of his employment. When he discovered the loss he did not turn back, he did not drive to any other place, he continued on his mission of delivering the disabled vehicle to its appointed place and then commenced his return to the garage by the same direct route which he had taken in picking up and delivering the disabled car. He never did turn off his direct route. He stopped when he passed the place where the car had been picked up to see whether his ring was lying there. If this is a deviation from employment, then it would also be a deviation from employment for a man whose ring fell off his hand while working to stoop over and pick it up. It would be a deviation, if he had discovered his loss before leaving the scene, to bend over and look for the ring. The Workmen's Compensation Act is to be liberally construed and neither requires nor contemplates any such strictures. It has been held that a stop by an employee to make a needed change of clothing, even though he deviates from his assigned route to do so, and even though the change is not absolutely essential, will not bar compensation. Mitchell v. Mitchell Drilling Co., 154 Kan. 117 (114 P2d 841). The value of the ring is not in issue, and to assume that an employee could not conduct a reasonable search for an article of value lost in the course of his employment without severing the master-servant relationship is applying strictures unknown even in the days of peonage. The judge of the superior court did not err in affirming the award of the full board which reversed the award of the single director denying compensation.

*Judgment affirmed. Nichols, P. J., Jordan, Hall and Russell, JJ., concur. Felton, C. J., concurs specially. Bell, P. J., Frankum and Eberhardt, JJ., dissent.*

DECIDED JUNE 30, 1964—REHEARING DENIED JULY 15, 1964.

*Woodruff, Savell, Lane & Williams, John M. Williams,* for plaintiff in error.

*William V. George,* contra.

EBERHARDT, Judge, dissenting. The employee here was a seventeen year old son of a common laborer at a sawmill. He was a senior in the local high school with an excellent attend-

ance record. On Fridays he dutifully turned his pay envelope over to his mother so that his earnings might be used in the support of his parents, his younger brother and three sisters, one of whom was retarded from brain damage due to an illness suffered during infancy. The family lived in a small two bedroom frame house. His employer, who operated a garage and body repair shop, finding the boy to be loyal, faithful and dependable help, built a room in connection with the business so that he might have a place of his own in which to sleep and at the same time be available during the night for calls that might come for the wrecker service.

If ever the facts of a case commanded sympathy or sounded a call to charity, these do. But judges are sworn to the duty of doing justice alike to the rich and the poor, under and according to law. Succor to the needy must be provided by other established institutions.

The Workmen's Compensation Act makes provision for the payment of compensation when an employee has suffered an "injury by accident arising out of and in the course of the employment." *Code Ann.* § 114-102. The injury must arise *both* out of and in the course of the employment. Neither alone is enough. *Montgomery v. Maryland Cas. Co.,* 39 Ga. App. 210 (146 SE 504); affirmed, 169 Ga. 746 (151 SE 363). "Under liberal construction the statute includes injury received in doing an act which the injured employee was employed directly to perform or an act incidental thereto, reasonably necessary in performance of the act he was employed to perform. If in performance of an act which he was directly employed to do, or an act reasonably necessary to be done in order to perform the act he was employed to do, the employee receives accidental injury, such injury is compensable. If the act does not come within either of these classifications, the injury is not compensable. Therefore whether an act comes within either classification is a question which involves the terms of the particular contract of employment." *U. S. Fidelity &c. Co. v. Skinner,* 188 Ga. 823, 829 (5 SE2d 9).

The facts here are not contested; it is only their legal effect. Pursuant to a call for wrecker service the employee, accompa-

nied by a young friend who was spending the night with him, drove some 10 miles northerly to tow in a car whose transmission had failed. It was parked headed north on the right side of the road. In accordance with instructions it was towed five miles further north to the home of the owner. The young friend had gotten underneath the car to assist in attaching the towing apparatus, and when he got from under the vehicle the employee brushed the dirt from the back of his jacket. Thereafter the employee discovered that his high school class ring was lost and reasoned that it occurred when he had brushed the dirt from his companion's jacket. Returning by the same route he stopped at the place where the car had been picked up for the purpose of making a search for the ring. The wrecker was driven off the pavement on the left side of the road, headed south, and parked with the lights left on. While he and his companion were out on the ground between the wrecker and the ditch searching for the lost ring a car approached from the south at a high speed. The driver of that vehicle apparently reasoned that the wrecker was in its lane on the highway and accordingly turned to the right, passing between the wrecker and the ditch and in so doing struck both of the boys, fatally injuring the employee.

Was the search for the ring a matter arising both "out of and in the course of the employment?" It must be conceded that it was not an act that the employee was directly employed to do. Certainly it was no part of his contract with the employer that he go out upon the highway to search for a lost ring. Was it "reasonably necessary in the performance of the act he was employed to perform?" How can it be said that the search for the ring was in any manner or to any extent necessary to the operation of the wrecker or the towing of a disabled vehicle, or to the return of the wrecker once that mission had been accomplished?

There was nothing to be done at the place where the disabled vehicle had been picked up insofar as the mission was concerned, and thus when the wrecker was stopped it was not in the furtherance of any business of the employer. It was a purely personal matter of the employee's. "Where the employee steps

aside from his employer's business to do some act of his own, not connected with his employer's business, the relationship of employer and employee, or master and servant, is, as to that act, completely suspended, and an accident occurring at that, time, resulting in injury to the employee, does not arise out of the employment" within the meaning of the Workmen's Compensation Act. Moss v. St. Paul-Mercury Ind. Co., (La. App.) 35 S2d 867, 870.

Further illustrative is the case of Mabry v. Fidelity & Cas. Co. of N. Y., (La. App.) 155 S2d 44, in which it appeared that a car salesman, returning a vehicle he had been trying to sell by the most direct route to the employer's place of business, stopped in front of a bakery shop and got out to go in and purchase some bread that his wife might feed to the birds. He slipped, fell and was injured on the sidewalk before reaching the shop. Pointing out that the proposed purchase of the bread was a purely personal act, having "not even the remotest connection with the business of the employer" and that the necessities of the employer's business did not require either that the salesman stop at the bakery or purchase the bread for his birds, the court held that the situation met neither element of the test and that the injury was not compensable.

In *Montgomery v. Maryland Cas. Co.*, 39 Ga. App. 210, supra, a nightwatchman who lived in the remains of a burned barge near the employer's premises, watching over its boats, barges, stores, storehouses and machinery, kept a dog which the employer neither required nor objected to. One night the dog fell overboard and its master went over attempting a rescue, but was drowned. Justice Gilbert wrote with much pathos and quoted at length from others about the virtue of the employee's effort to save his faithful dog and of how it was a thing calculated to have strong appeal for any who might have experienced the situation—but held the rescue effort to have been a purely personal matter and a deviation from the employee's duties so that his drowning was not compensable.

Cases holding that injury received from an accident occurring while the employee took time for eating a meal or for getting coffee, etc., are compensable have no application here.

The rationale of those cases is that it is in the interest of the employer's business that the employee have the needed bodily refreshment in order that he may accomplish the work expected of him. The same is true as to the situation where the employee must step aside to answer a call of nature. These things, though personal, are also in the employer's interest.[1] *Employers Liability &c. Corp. v. Pruitt*, 63 Ga. App. 149 (10 SE2d 275).

If the stopping of the wrecker and the search had been a part of the duties of the employee in accomplishing his mission, or in the interest of the employer's business, there could be no question that injuries received resulting from the hazards of the highway would be compensable. It is only because the employee had stepped aside from his duties and engaged upon a purely personal mission that the injury does not come within the protection afforded by the terms of the Act.

The employee had not ended the deviation and resumed his duties for the employer, as was the case in *Glens Falls Indem. Co. v. Sockwell*, 58 Ga. App. 111 (197 SE 647), nor was he endeavoring to protect property of the employer, as in *U. S. Fidelity &c. Co. v. Hamlin*, 98 Ga. App. 167, 178 (105 SE2d 481). His companion testified that there had been no reason for stopping the wrecker other than to search for the lost ring and that when young Souther was struck by the approaching vehicle he "was still looking for the ring."

As harsh as it may seem in the light of the facts here I must dissent, because the law demands it. Justice is not to be administered by bending the law to fit the situation with which we are confronted today, and bending in another direction to meet the situation of tomorrow. It can be done only by measuring the situation with the law as it is written. If that does not meet with the sense of fairness which society demands it may be corrected by the General Assembly.

---

[1]It is to be noted that if the employee had time off for his meal which he might employ as he chose and eat his lunch where he pleased, during which time he received an accidental injury it would not be compensable. *Ocean Acc. &c. Corp. v. Farr*, 180 Ga. 266 (178 SE 728).

It should be noted that the deputy director placed his finding that the injury was not compensable upon the basis and substantially in the same language of *U. S. Fidelity &c. Co. v. Skinner*, 188 Ga. 823, supra. When appealed to the full board the majority, conceding that the employee had deviated from his duties, reversed on the basis that it was "slight" and thus should not bar compensation. The chairman disagreed and voted to sustain the award of the deputy director. Thus all have found that there was a deviation, and having done so they are bound by the legal effect of it. I think the rules laid down by the Supreme Court in *Skinner* are controlling.

There is reliance on the cases of Shoffler v. LeHigh Valley Coal Co., 290 Pa. 480 (139 A 192) and Smith v. University of Idaho, 67 Idaho 22 (170 P2d 404), but as I read them they do not support the majority ruling. In Shoffler an employee of a coal mine whose duty it was to see that empty cars were let down from the "rim" to the "depression," to "sprag" loaded cars dropped from the head of the slope, oil the sheave wheels, and clean up around the place, went aboard the locomotive, started it backward and crashed into empty cars standing on the track. The engine upset and he was killed. An award of compensation was reversed, the court holding that the employee had deviated from his employment to do something that was wholly foreign to his duties as an employee.

In Smith the housemother of a dormitory who was employed on a 24-hour per day basis and who was furnished living quarters and all meals save breakfast, had the duty of promoting the social, health and recreational activities of the girls who stayed in the dormitory. Mrs. Smith went to town, purchased ornaments for the dormitory Christmas tree and a jar of coffee. On her return to the dormitory she fell, broke her hip and died from that injury. Conceding that the purchase of the coffee was for her personal use at breakfast, she also had the ornaments for the Christmas tree, a part of the girls' social and recreational activity. Moreover, she was employed on a 24-hour per day basis, and in that respect the situation is in the category of our traveling salesmen cases, exemplified by *Zurich Ins. Co. v. Zerfass*, 106 Ga. App. 714, 717 (2) (128 SE2d 75).

The Supreme Court of this State having laid down the rule in *Skinner* I think we must follow it, even if it be found that other jurisdictions have made contrary rulings.

I am authorized to say that Presiding Judge Bell and Judge Frankum concur in this dissent.

FELTON, Chief Judge, concurring specially. I concur in the opinion and judgment but desire to add that in my opinion the majority view is based solely on a disagreement about what the law is in cases where there is a slight deviation. The rulings in *Farr* and *Skinner*, supra, are not authority for the dissent. In *Farr* the employee was not on the premises of the employer when injured. He was sent to the building where he was injured and under the theory of the case was not in the course of his employment during his lunch hour. In *Skinner* the effect of the Supreme Court's ruling is that there was no deviation at all. It was a case of not being in the course of employment from the time the salesman-employee left Savannah to go to Tybee until he returned to Savannah. In this case the employer lost his ring while performing his job. If he had looked for it immediately and had been hurt while doing so I do not believe most reasonable minds would hold that the search was so far removed from employment as to bar compensation. His search on a return from his mission does not change the principle on which the affirmance of the awarding of compensation is based.