## 37223. U. S. FIDELITY & GUARANTY COMPANY *et al. v.* HAMLIN.

DECIDED SEPTEMBER 5, 1958—
REHEARING DENIED SEPTEMBER 18, 1958.

172

*Whelchel & Whelchel, Hoyt H. Whelchel, Jr.,* for plaintiffs in error.

*H. G. Rawls,* contra.

QUILLIAN, Judge. There is as stated in the preceding statement of facts no issue as to whether the award was supported by evidence except that the plaintiff in error contends there was not sufficient competent evidence in the record to prove the deceased was when accidently injured performing a service in the course and scope of his employment.

It is elementary that an injury compensable under the Workmen's Compensation Act must be caused by an accident both arising out of and occurring in the course of the claimant's employment. Code (Ann.) § 114-102.

It is held by this court in *Georgia Ry. & Power Co.* v. *Clore,* 34 *Ga. App.* 409, 410 (129 S. E. 799), quoting and approving the language of a Massachusetts case: "The causative danger must be peculiar to the work and not common to the neighborhood. It must be incidental to the character of the business and not independent of the relation of master and servant. It need not have been foreseen or expected, but after the event it must appear to have had its origin in a risk connected with the employment, and to have flowed from that source as a rational consequence."

The same holding is phrased in slightly different language in *U. S. Fidelity &c. Co.* v. *Skinner,* 188 *Ga.* 823 (5 S. E. 2d 9).

So the claimant's right to compensation depends upon whether there was sufficient competent evidence in the record to show the deceased when fatally injured was engaged in work necessary or reasonably incident to the purpose of his employment.

The final test is "whose work was the servant doing and under whose control was he doing it?" *Cooley* v. *Tate,* 87 *Ga. App.* 1, 5 (73 S. E. 2d 72).

We will first consider the sufficiency of the evidence to support the award upon the basis that lending assistance to fellow travelers upon the highway was within the scope and course of the deceased's employment. This is the theory upon which the award of compensation was based.

The employer testified that he was not in the wrecker business

and that the aiding of the motorist was not a part of his business. But he evidently meant that rendering such service was a matter incidentally connected with and done for the benefit of his business. In this connection his testimony was that he thought it was good business, and that he gave his employees to understand that it was his policy to give such succor to fellow travelers on the theory of reciprocity in carrying on his business within 200 miles in each direction from Albany and that it was his thought that if he helped other motorists they would in turn lend aid to him.

The employer's own testimony clearly proved that he gave his employees to understand that they were to follow the practice of giving succor to motorists they found upon the highways in distress or need of aid. This was true though the employer did not recall the exact language of the discussion of the matter with the employees and left to their discretion the circumstances under which the help would be given. He testified that he even instructed as to the manner that the aid was to be given under certain circumstances; that the winch was to be used to pull the trucks out and that they were not to push other vehicles with his trucks. When the deceased stopped and began helping another driver with the adjustment of one of his tires, he was simply obeying instructions of his employer in regard to duties of his employment.

It is the employer's position that the claimant is not entitled to compensation because the deceased was just prior to the fatal accident engaged in an act not within the regular and customary routine of his employment, especially since the deceased was not expressly ordered to perform the act. However, the weight of authority presents a contrary view. "An injury suffered by an employee while voluntarily performing some service for his employer entirely outside of and unrelated to his regular employment is ordinarily not compensable as arising out of and in the course of such regular employment. According to many authorities, however, the employee is entitled to compensation as for an injury arising out of and in the course of his employment when such injury was received in the performance of work for his employer outside the scope of his usual duty, but

which the employee had been expressly ordered to do by someone authorized to direct him as to his work; and even in the absence of orders, the employee has in many cases been held entitled to compensation for an injury sustained while doing an act outside the scope of his usual duties where such act was reasonably necessary or incidental to his regular work, particularly if an emergency existed." 58 Am. Jur. 738, § 231.

We are cognizant that the employer made plain that it was optional with an employee as to whether he would assist fellow travelers in distress and that he did not think that he could require one of his employees to render such service. It must be remembered that according to the employer's testimony the deceased had no specific duties, but was to do whatever "became handy" in connection with the employer's business. In these circumstances it is apparent that whether the employer was of the opinion that he could require his employees to give succor to fellow travelers, that under the terms of the deceased's contract of employment, as revealed by the employer's testimony, he did have the right to require such service of the deceased.

An employee who does work that his employer authorizes in carrying out the purpose of his employment, and which the employer considers beneficial to the business about which the employee is engaged to labor is within the scope of the latter's employment.

The fact that it was left to the deceased's discretion as to whether, when, and under what circumstances aid would be given to fellow travelers certainly would not exclude that service from the scope of his employment. In practically every task undertaken by a laborer there is a range of discretion as to what he should do in best accomplishing the purpose of his employment. For instance in driving a truck he must determine whether to pass other vehicles, whether to yield the right of way and whether and where to park the truck, as well as other matters incident to its successful operation. *Fulmer* v. *Aetna Cas. & Surety Co.* 85 *Ga. App.* 102 (68 S. E. 2d 180).

It is made to clearly and unequivocally appear from the employer's testimony that when the deceased, on the occasion of the fatal accident, left the employer's truck to assist a fellow

traveler to repair a tire, he was performing a duty of his employment connected with his master's business.

On another theory the evidence supported the award. The deceased was at the very moment that he was struck down endeavoring to protect the employer's truck of which he was in charge, from damage. In *Glens Falls Indem. Co.* v. *Sockwell*, 58 *Ga. App.* 111 (197 S. E. 647), an employee who did not have permission to aid other travelers and had been engaged in assisting a fellow traveler, but at the moment when he was injured had returned to and was preparing to enter his employer's truck, was acting within the scope of his employment.

*Judgment affirmed. Felton, C. J., and Nichols, J., concur.*