## 65553. GEORGIA POWER COMPANY v. PINSON.

CARLEY, Judge.

In February of 1980, appellee-employee received a blow to his head while engaged in his employment with appellant-employer. Thereafter, appellee developed visual field loss in both eyes. The doctor treating appellee was originally able to determine only that the cause of appellee's vision loss was "not clear." Apparently because of the then-existing medical inability to determine the exact cause of the problem and thereby eliminate the possibility of the employment-related injury as its source, appellant began to pay appellee workers' compensation benefits for permanent partial disability pursuant to OCGA § 34-9-263 (Code Ann. § 114-406). In January of 1981, appellant filed a notice to controvert with the Board and then suspended appellee's compensation. The basis for appellant's action in this regard was asserted to be the following: "[N]ewly discovered medical evidence [that] . . . the visual impairment which is the basis for the employee's claim for Workers' Compensation benefits is not the result of injury by accident arising out of and in the course of employment." The "newly discovered evidence" was the change in the medical opinion of appellee's physician from that previously held — that the cause of the loss of eyesight was "unclear" — to a new one that the cause thereof was "much more likely" to be a non-job-related disease, migraine syndrome. This new medical opinion was based upon the fact that, only subsequent to the original "unclear" opinion, appellee had manifested and expressed symptoms indicative of migraine syndrome which was a "much more likely" cause of the sight loss than the injury to appellee's head. Appellee objected to the suspension of his compensation and requested a hearing.

The administrative law judge (ALJ) found that appellant's evidence was "newly discovered" and gave it consideration in making her award. The ALJ found that "[a]ll of the medical experts agree that a bump on the head of the nature received by [appellee] would be highly unlikely to affect [his] vision to the extent it has been affected." (R-281) The ALJ further found, however, that "[i]t is possible that the work related injury to [appellee's] head on February 12, 1980 caused his loss of side vision" and made an award for appellee accordingly.

Appellant appealed the award to the Full Board. Upon a de novo review, the Board refused to consider appellant's "newly discovered evidence," concluding that it was "impeaching and . . . not such as could not have been discovered by exercise of due diligence." The Board then entered an award for appellee which was premised upon

the following conclusion of law: "The alleged newly discovered evidence does not meet the test for newly discovered evidence and could not be used to controvert liability for this claim on that basis. Having failed to show the existence of newly discovered evidence, [appellant] was not entitled to controvert liability for this claim pursuant to the provisions of [OCGA § 34-9-221 (h) (Code Ann. § 114-705)]."

Appellant then appealed the award of the Board to the superior court. The superior court affirmed the Board. Appellant's petition for a discretionary appeal to this court was granted.

1. OCGA § 34-9-221 (h) (Code Ann. § 114-705) provides: "Where compensation is being paid without an award, the right to compensation shall not be controverted except upon the grounds of change of condition or newly discovered evidence unless notice to controvert is filed within 60 days of the due date of first payment of compensation." The sole issue presented for review in the instant case is whether the superior court erred in affirming the Board's refusal to consider appellant's "newly discovered evidence" regarding the lack of a causal connection between appellee's employment-related injury and his subsequent vision loss.

"Rule 708 of the Rules and Regulations of the State Board of Workers' Compensation, governing the admission of such evidence, provides that the board may receive newly discovered evidence if it is of the nature and character of newly discovered evidence required for the granting of a new trial under Georgia law. That is, '[t]he evidence sought to be introduced must not be evidence of a cumulative or merely impeaching character, but must be of a character as likely would have produced a different result had the evidence been procurable at first hearing. It must be shown that the evidence was not known to the party at the time of the original hearing, and that, by reasonable diligence, this new evidence could not have been secured.' [Cit.] '. . . [I]t is up to the employer to present his evidence at the hearing, not to offer it several months later.' [Cit.] 'Post mortem zeal and earnestness is not, in the eyes of the law, a substitute for ante mortem diligence.' [Cit.]" *Dennington v. Rockdale Package Stores,* 161 Ga. App. 450, 451-452 (288 SE2d 709) (1982). Although no previous hearing had been held regarding appellee's entitlement to compensation in the instant case — appellant having voluntarily initiated benefits without a hearing pursuant to recent changes in the law — the above stated definition of "newly discovered evidence" is applicable, and the diligence requirement is judged on the basis of when compensation was voluntarily initiated rather than the date of the "first hearing." See *Anderson v. Araguel, Sanders, Carter & Swain,* 163 Ga. App. 610, 612 (295 SE2d 750) (1982).

As noted above, the Board in the instant case refused to consider appellant's "newly discovered evidence" on the grounds that it was impeaching and that, in the exercise of due diligence, it could have been discovered previously. With regard to whether the physician's new opinion was inconsistent with and accordingly impeaching of his prior opinion, it appears that the Board was in error. That the physician was originally unable to form a "clear" opinion as to the cause of appellee's vision loss is not inconsistent with and impeaching of his subsequently formed opinion, which was based upon new facts regarding appellee's symptoms, as to the "much more likely" cause thereof. "[T]he prior [opinion] was such that standing alone it was incomplete and without some explanation was meaningless to show whether a contradiction existed between such [previous opinion] and the [opinion] given upon the [hearing] sub judice . . . The explanation given by the [physician] . . . eliminated any contradiction. [Cits.]" *Smith v. Smith,* 228 Ga. 820, 823 (188 SE2d 507) (1972). Moreover, it appears that the second opinion itself "tends to establish a new and independent fact" — that appellee suffered from migraine syndrome which was a "much more likely" cause of his eyesight loss — and as such should not have been refused consideration by the Board on the ground that it was impeaching of the original "unclear" opinion. See *Graham v. State,* 86 Ga. App. 896 (1) (73 SE2d 46) (1952).

However, in order to be given consideration as "newly discovered evidence," not only would the physician's subsequent opinion have to be non-impeaching of his previous one, it would also have to be shown that it was not previously obtainable in the exercise of ordinary diligence. It is this diligence requirement which we perceive to be the crux of the instant case. We note at the outset that there is absolutely no evidence that appellant was anything but diligent with regard to the initiation of appellee's workers' compensation. As noted above, under recent changes in the workers' compensation law the employer/insurer is required to begin compensation benefits without a hearing and entry of an award unless the choice is made to controvert its employee's right to compensation. Failure to initiate compensation or to controvert payment on reasonable grounds subjects the employer/insurer to the possible imposition of certain penalties. See OCGA §§ 34-9-221, 34-9-108 (Code Ann. §§ 114-705, 114-712). It was apparently this statutory scheme that induced appellant's original decision to begin payment of compensation to appellee rather than to controvert compensation based upon the then-existing medical opinion that the cause of the eyesight loss was "unclear."

With regard to the subsequently formed medical opinion, there is likewise no evidence that appellant was anything but diligent in its

"discovery." This is true because the evidence which ultimately led to the formation of the opinion apparently was not available at the time appellant began to pay appellee compensation. The record demonstrates that it was not until sometime in the summer of 1980, several months after the initiation of compensation, that appellee manifested and expressed to the physician symptoms indicative of migraine syndrome. Up until that point, appellee had apparently never experienced — or at least had never expressed to the physician that he had experienced — symptoms consistent with migraine syndrome. Accordingly, appellee had not been examined and treated for that disease. Until appellee began experiencing and, more importantly, expressing to the physician symptoms consistent with migraine syndrome, the physician had no reason to believe that such condition existed or to make the medical determination of a connection between it and appellee's loss of vision. It appears that, as soon as appellee's symptoms were expressed to the physician, he was diagnosed and treated for possible migraine syndrome and the physician was then able to change his opinion from one that was "unclear" as to the causation of the loss of vision to one that was a "much more likely" explanation. Even assuming that the record supported the conclusion of the superior court that the information which led to the second opinion "was available at the time the doctor gave his first opinion," there is nothing to show that appellant's failure to have it at the time it began payment of compensation was the result of anything but appellee's failure, for whatever reason, to make that information known to his physician until some months later. We perceive no beneficial result from a construction of the workers' compensation law which would penalize an employer/insurer, who has voluntarily begun payment of compensation, because it failed to "discover" evidence which the employee himself did not divulge to his physician until sometime later. Under the facts of this case, appellant was entitled to have the determination of causation and liability made by the Board. Appellant's evidence regarding causation was "newly discovered" and should have been given consideration by the Board in determining the issue of causation and liability.

2. Although the Full Board made no determination that appellant's "newly discovered evidence" was not likely to produce a different result, the superior court did so and used that finding to further support its decision to affirm the Board's refusal to give appellant's newly discovered evidence consideration. It is obvious that the superior court was without authority to make such a finding. "Neither the superior court nor the Court of Appeals has any authority to substitute itself as the fact finding body in lieu of the

board. [Cit.]" *Atkinson v. Home Indem. Co.,* 141 Ga. App. 687 (234 SE2d 359) (1977).

3. "[W]here it affirmatively appears that the award is based upon an erroneous legal theory, and that for this reason the board has not considered all of the evidence in the light of correct and applicable legal principles, the case should be remanded to the board for further findings. [Cit.]" *Miller v. Travelers Ins. Co.,* 111 Ga. App. 245, 248 (141 SE2d 223) (1965). Based upon the erroneous legal theory that it was not "newly discovered evidence," the Board in the instant case failed to consider the physician's subsequent medical opinion as to the causation of appellee's vision loss. Accordingly, the superior court's affirmance of that award is reversed with direction that the case be remanded to the Board for further proceedings not inconsistent with this opinion.

*Judgment reversed with direction. Deen, P. J., and Banke, J., concur.*

DECIDED JUNE 23, 1983.

*Andrew J. Hamilton, Gwendolyn R. Tyre,* for appellant.
*T. Emory Daniel, Jr.,* for appellee.