A97A1140. OLDE SOUTH CUSTOM LANDSCAPING, INC. et al.
v. MATHIS.
(494 SE2d 14)

RUFFIN, Judge.

Derrick Mathis filed this workers' compensation claim against his employer Olde South Custom Landscaping, Inc. ("Olde South") and its insurer, CIGNA Insurance Company ("CIGNA"), for injuries he sustained when he stopped to assist stranded motorists he encountered while performing employment duties for Olde South. The administrative law judge ("ALJ") declined to award Mathis benefits, finding that his "injuries did not arise out of his employment, but out of a deviation from it." The appellate division of the State Board of Workers' Compensation ("appellate division") reversed, concluding that Mathis had not deviated from his employment, but was "[e]xercising ordinary standards of decency and compassion while in the course of employment. . . ." The superior court affirmed. We granted Olde South's application for discretionary appeal and for reasons which follow, we reverse.

"In reviewing a workers' compensation award, both this court and the superior court must construe the evidence in the light most favorable to the party prevailing before the appellate division. It is axiomatic that the findings of the [Board], when supported by any evidence, are conclusive and binding, and that neither the superior court nor this court has any authority to substitute itself as a fact finding body in lieu of the Board." (Citations and punctuation omitted.) *Atlas Automotive v. Wilson,* 225 Ga. App. 631, 633 (1) (484 SE2d

669) (1997). "The courts may, however, review the Board's legal conclusions." *Crider's Furs v. Atkinson*, 221 Ga. App. 681, 682 (472 SE2d 507) (1996).

The relevant facts in this case are undisputed. The record shows Derrick Mathis was a foreman for Olde South. He was required by his employment to travel to various locations for landscaping assignments and thereafter to return to Olde South's office with the truck and landscaping equipment. On January 12, 1995, Mathis and two other Olde South employees had completed their jobs for the day and were returning to Olde South's office in one of the company's trucks. As he was driving north on Interstate 85, Mathis noticed an elderly couple stranded in the emergency lane with the elderly man pushing the car. Mathis saw no one stopping to assist them and in fact claimed to have seen a wrecker drive by without stopping. Mathis exited the interstate two exits later and returned to offer assistance. Olde South had no established policy mandating or prohibiting its employees from assisting stranded motorists.

When they arrived at the stranded car, Mathis and the other Olde South employees helped push the car. When it became difficult to push the car up an incline, Mathis and one of his co-employees put their feet against the back bumper of the stranded car while sitting on the front bumper of the Olde South truck, creating what was described as a human wedge. The third Olde South employee then placed the truck in gear and began pushing the disabled car along the emergency lane, with Mathis and the other Olde South employee between the two vehicles. The plan went awry, however, and Mathis fell under the truck and was caught and dragged by the trailer. Mathis suffered a fractured vertebra and was paralyzed by the accident. Mathis sought total disability income benefits from Olde South and CIGNA.

The ALJ, in denying benefits, refused to recognize "a 'good samaritan' exception to the deviation rule," holding that such relief had to be enacted by the legislature. The ALJ concluded that Olde South received no benefit from Mathis' deviation.

In reversing, the appellate division found that there was no deviation from his employment duties and that Mathis' actions promoted Olde South's good will to the public. The superior court, in affirming the appellate division, relied in part on a decision of the Florida Court of Appeals that found compensable injuries sustained by a truck driver who stopped to assist motorists involved in a head-on collision. *Rockhaulers, Inc. v. Davis*, 554 S2d 654 (Fla. App. 1989). Based on *Davis*, the superior court concluded that Mathis was responding to a "true emergency" and thus the appellate division properly found his injuries to be compensable.

The issue of whether the Georgia Workers' Compensation Act

applies to an employee who is injured while acting as a Good Samaritan is one of first impression. The Good Samaritan Rule is an extension of the positional risk doctrine. See A. Larson, The Positional-Risk Doctrine in Workmen's Compensation, 1973 Duke L. J. 761, 808. The positional risk doctrine, which has been adopted in Georgia, holds that for an "injury to be compensable it is only necessary for the claimant to prove that his work brought him within range of the danger by requiring his presence in the locale where the peril struck, even though any other person present would have also been injured irrespective of his employment." *Nat. Fire Ins. Co. v. Edwards*, 152 Ga. App. 566, 567 (1) (263 SE2d 455) (1979). The Good Samaritan Rule, adopted in Florida and other jurisdictions, does not involve an outside force, such as lightning, tornadoes, or criminal assaults, injuring an employee in a location where his employment placed him, but rather the implied invitation to rescue someone in need encountered by the employee. Larson, 1973 Duke L. J. at 808; *Edwards v. Louisiana Forestry Comm.*, 60 S2d 449 (La. 1952) (employee injured while attempting to rescue a child from attacking dog could obtain benefits); *Reilly v. Weber Engineering Co.*, 258 A2d 36 (N.J. Super. 1969) (compensable injuries resulted when employee attempted to rescue a young boy dangling from high tension wire); *Big "2" Engine Rebuilders v. Freeman*, 379 S2d 888 (Miss. 1980) (injuries suffered by employee who stopped for an apparently stranded motorist who hit the employee over the head with a gun were compensable).

Under the Good Samaritan Rule, " '(i)njury incurred in the rescue of a stranger is compensable if the conditions of employment place claimant in a position which requires him by ordinary standards of humanity to undertake the rescue.' [Cit.] . . . [T]here must be a true emergency, as distinguished from a mere benefit to an employer through the act of providing assistance to one in trouble. [Cit.] This 'true emergency' requirement lies at the heart of the positional risk doctrine. Under this theory, an employee's injury is compensable if it was incurred in the rescue of a complete stranger, provided the employment brought the employee to the place where he observed the situation calling for a rescue attempt. [Cits.]" *Davis*, 554 S2d at 656.

The Good Samaritan Rule, however, is an exception to the deviation rule, which has been employed by Georgia courts. The deviation rule provides that when an employee "steps aside from his employer's business to do some act of his own, not connected with his employer's business, the relationship of employer and employee, or master and servant, is, as to that act, completely suspended, and an accident occurring at that time, resulting in injury to the employee, does not arise out of the employment within the meaning of the Workmen's Compensation Act." *Hartford Accident &c. Co. v. Souther*, 110 Ga.

App. 84, 85 (2) (137 SE2d 705) (1964).

We have located only two instances in which our appellate courts have even remotely addressed the Good Samaritan Rule. See *Glens Falls Indem. Co. v. Sockwell*, 58 Ga. App. 111 (197 SE 647) (1938) (physical precedent only), and *U. S. Fidelity &c. Co. v. Hamlin*, 98 Ga. App. 167 (105 SE2d 481) (1958). In *Sockwell*, an employee stopped on the side of the road to aid stranded motorists. He was injured while stepping into his vehicle *after* having assisted the motorists. We concluded that the injury was compensable because, at the time the employee was injured, "he had ended his deviation . . . ," of assisting the stranded motorists and had resumed his duties to his employer. Id. at 115. We declined to address whether the employee's actions in providing aid to the motorists constituted an emergency or established good will for the employer. Id. at 113.

In *Hamlin*, supra, the employee stopped while driving during the course of his employment to assist a stranded motorist. He was killed and his family was awarded workers' compensation benefits. However, the employer in *Hamlin* had previously advised its employees to "follow the practice of giving succor to motorists they found upon the highways in distress or need of aid." 98 Ga. App. at 176. While the employer left it to the discretion of the employees as to when and under what circumstances they would offer assistance, the employer admitted instructing the employees "as to the manner that the aid was to be given under certain circumstances. . . ." Id. Thus, *Hamlin* is distinguishable from the instant case since there is no evidence Olde South ever instructed its employees to assist stranded motorists or that it had any such policy. Clearly, given the employer's express policy in *Hamlin*, the actions of the employee in that case were connected to his employment.

In the absence of any Georgia authority providing for the adoption of the Good Samaritan Rule, we find the appellate division erred in applying it in this case. " 'The [appellate division] is an administrative body and it possesses only the jurisdiction, power, and authority granted to it by the legislature. [Cit.]' " *McGinty v. Alfred L. Simpson & Co.*, 188 Ga. App. 718, 719-720 (374 SE2d 217) (1988).

Although the Workers' Compensation Act is to be liberally construed, it is "only for the purpose of bringing employers and employees within the provisions of [the Act] and to provide protection for both. . . . The provisions of [the Act] shall be construed and applied impartially to both employers and employees." OCGA § 34-9-23. Accordingly, "[w]e act even-handedly when we apply the Act as it is written." *Cartersville Ready Mix Co. v. Hamby*, 224 Ga. App. 116, 119 (2) (479 SE2d 767) (1996).

We find no provision in the Act that could be liberally construed so as to place the burden on employers to compensate for injuries

resulting when an employee decides, due to a sense of decency, compassion or morality, to step away from his employment duties to assist someone in need. One member of the appellate division, in a concurring opinion, concluded that the Rule "may be adopted by the Courts as their interpretation of arising out of and in the course of employment without need for enabling legislation." (Emphasis omitted.) We disagree, holding that application of the rule is a far-reaching extension of the "arising out of" and "in the course of" employment language contained in the Act. OCGA § 34-9-1 (4). We would not be interpreting the Act impartially or even-handedly were we to conclude that the Rule could be applied absent enabling legislation.

As Mathis so aptly points out, Georgia has one of the most complex Good Samaritan *statutory* schemes in the United States. See Good Samaritan Laws — Legal Disarray: An Update, 38 Mercer L. Rev. 1439, 1456 (1987). Georgia has in numerous instances statutorily limited the liability for those acting as Good Samaritans or in the interest of public welfare. See, e.g., OCGA §§ 51-1-29 through 51-1-30.1 (limitation of liability for persons rendering emergency care, for health care providers voluntarily rendering assistance, for those acting to minimize and repair damage resulting from catastrophic acts of nature and those assisting in fighting fires); OCGA § 31-11-8 (liability limited for those rendering emergency care). While we praise Mathis' actions and are deeply sympathetic for the injuries he sustained, given the language of the Workers' Compensation Act we are compelled to leave it to the Legislature to decide whether a Good Samaritan should be protected under the Act. While we agree with other jurisdictions that certain rescue attempts are mandated by ordinary standards of humanity and that the rescuer who is injured should not be punished for having made the attempt, whether employers are to bear the costs incurred when their employee makes the rescue attempt is a matter best left for our Legislature.

Absent the Good Samaritan Rule, Mathis' injuries are not compensable as they did not arise out of his employment and his actions were a deviation from his employment duties. See *Souther*, supra. Mathis temporarily abandoned his employment by exiting the interstate and turning around to help other motorists. This was an act of his own that was not connected to Olde South's business of landscaping. In stating why he went to the couple's aid, Mathis in no way indicated that it was for Olde South's benefit. Indeed, there was no evidence that Olde South benefitted by his actions.

As Mathis' deviation constituted a deviation from his employment, we agree with the ALJ that Mathis' injuries are not compensable under the Act and reversal of the superior court's judgment is required.

*Judgment reversed. Birdsong, P. J., and Eldridge, J., concur.*

DECIDED OCTOBER 22, 1997 —
RECONSIDERATION DENIED NOVEMBER 13, 1997 —

*Zirkle & Hoffman, Eric S. Jones,* for appellants.
*Marcus & Moskowitz, Todd K. Maziar,* for appellee.