## A02A0434. WAGA-TV, INC. et al. v. YANG.
(568 SE2d 58)

SMITH, Presiding Judge.

We granted the employer's application for discretionary appeal in this workers' compensation case to consider the superior court's application of *Smith v. Lockheed-Ga. Co.*, 185 Ga. App. 869 (366 SE2d 178) (1988). Here, the superior court relied upon *Smith* to reverse the finding of the administrative law judge and the Appellate Division of the State Board of Workers' Compensation that James Yang had undergone a change of condition from total disability to temporary partial disability. Because we conclude that *Smith* does not apply to the facts presented here, we reverse.

Yang was a cameraman for WAGA-TV. In December 1986, he was knocked down by two high school football players while filming a game. This incident damaged Yang's hip replacement dating from 1974 and resulted in surgery to install a new hip prosthesis. Yang returned to work at WAGA on a limited basis while receiving temporary partial disability benefits. In 1991, Yang's position at WAGA was eliminated, and he was laid off along with several other people. At that time, the employer voluntarily increased Yang's payments to temporary total disability.

As soon as he was laid off from WAGA, Yang began work for his own production company, Yang Communications, while continuing to receive temporary total disability payments. Yang Communications is wholly owned by Yang. He is its president, and his wife is the only other person who has worked for the corporation.

It appears undisputed that Yang has been working very actively on behalf of his corporation. While his wife has been involved in keeping the books, Yang has performed all other work for Yang Communications, including videotaping, photography, and post-production work for various films and commercials. He has traveled all over the world, including Taiwan, Panama, Canada, and Guatemala, on the corporation's business. It is undisputed that this work has generated substantial gross revenues, with customers paying up to $15,000 for a single project. Yang also sold subscriptions and wrote stories for a magazine, Pacific Times, in amounts ranging from $500 to $1,000 per month, and sold advertising in the magazine. The employer's expert testified that over $526,000 passed through Yang's personal accounts between 1991 and the hearing in 1998. Yang's tes-

timony was contradictory regarding whether he or the corporation made money in 1993. At the hearing, however, he denied that the corporation made money, contending that he was still putting money back into the business and borrowing money to "make it grow." WAGA points out that it offered vocational rehabilitation assistance to Yang in 1993, but Yang objected and refused assistance because, as Yang testified, "I had the company going on strongly."

This litigation began when WAGA and its insurer, Travelers Indemnity, filed a petition alleging a change in Yang's condition for the better. After a hearing, the ALJ issued findings of fact and conclusions of law. He found that the original 1986 accident was a compensable on-the-job accident and injury. After making findings of fact regarding Yang's work and earnings with his corporation, the ALJ concluded that Yang was not totally disabled and had in fact been working since 1991. However, he also concluded that Yang had not received any actual income from the corporation but was going "into the hole" in order to keep it going. The ALJ found that Yang was entitled to temporary partial rather than total disability benefits because he had "returned to work." But because of the "extenuating circumstances" presented by the facts, the ALJ did not order Yang to repay the difference between the partial and total benefit payments. Instead, the ALJ designated that amount as a credit for any disability benefits that might be payable in the future.[1] The appellate division accepted the ALJ's findings of fact, making only two apparently minor clerical amendments.

The superior court, however, concluded on the basis of *Smith*, supra, that Yang's failure to receive any net income demanded a finding of no change in his condition from total disability. The superior court reasoned that operating an unprofitable business did not constitute a change of condition for the better. It therefore found that Yang remained totally disabled and was entitled to continue to receive benefits for total disability and reversed the appellate division's holding that Yang was no longer totally disabled, affirming the decision otherwise. This appeal followed.

"[T]he term 'change in condition' means a change in the wage-earning capacity, physical condition, or status of an employee . . . which change must have occurred after the date on which the wage-earning capacity, physical condition, or status of the employee . . . was last established by award or otherwise." OCGA § 34-9-104 (a) (1).

---

[1] As Yang acknowledges, his date of accident precedes the 1992 amendments to the Workers' Compensation Act regarding automatic conversion of benefits to temporary partial disability and the 400-week maximum for temporary total disability benefits, and absent appellants' petition he "would still be on temporary total disability benefits with no maximum number of weeks."

This language is a substantial change from the earlier version of this Code section, Ga. Code Ann. § 114-709 (Ga. L. 1968, p. 3, § 5), which defined a "change in condition" as "solely an economic change in condition occasioned by the employee's return or ability to return to work for the same or any other employer; or inability to work or continue to work for the same or any other employer, which inability is proximately caused by the accidental injury."[2] See *Maloney v. Gordon County Farms*, 265 Ga. 825, 826-827 (462 SE2d 606) (1995). It is presumed that, in changing the language of this Code section to delete this language, the legislature intended to remove this provision and to change the effect of the statute. See *Ga. Mental Health Institute v. Brady*, 263 Ga. 591, 592-593 (2) (a) (436 SE2d 219) (1993). The legislature therefore deliberately and explicitly expanded the definition of "change of condition" to include wage-earning capacity.

"Temporary total disability" is compensated as provided in OCGA § 34-9-261. "Temporary partial disability" is provided for in OCGA § 34-9-262, "where the disability to work resulting from the injury is partial in character but temporary in quality." The cases dealing with temporary partial disability recognize that this condition is judged by the employee's *capacity* for work, as provided in the statute itself, not his actual working status: "The employer is not liable for wage loss when there is no diminution of earning capacity." *Wal-Mart Stores v. Harris*, 234 Ga. App. 401, 402 (506 SE2d 908) (1998) (refusal of employment governed by OCGA § 34-9-240 (a)).

> According to the statutory scheme, the *ability to earn* — not the *propensity to earn* — controls the issue presented in this appeal. Under the statutory language the legislature plainly intended a claimant's benefits to be reduced in these circumstances to an amount which [he] is *"able"* to earn. It is not reasonable to conclude the claimant is *able* to earn nothing because [he] is earning nothing.

*Mountainside Med. Center v. Tanner*, 225 Ga. App. 722, 723 (484 SE2d 706) (1997).

The decision in *Smith*, supra, is not inconsistent with the holdings in *Wal-Mart* and *Mountainside*. Rather, the superior court misapplied *Smith* here because the facts presented there differ substantially from those surrounding Yang's injury. Smith injured his knee in 1982, and his employer paid benefits for temporary total disability.

---

[2] This former Code section was stricken in its entirety and the current language substituted by Ga. L. 1978, pp. 2220, 2233, § 13. While the Code section subsequently has been modified and reenacted, the operative definition remains essentially the same as that enacted in 1978.

In 1985 he operated "a ceramics shop from which he had received revenues but no actual net income." *Smith*, supra, 185 Ga. App. at 869.[3] In 1986, his employer sought a change in condition hearing. The ALJ found that, retroactive to the beginning of his ceramics business, Smith was entitled to temporary partial disability payments rather than temporary total disability payments. Id. The appellate division affirmed, but the superior court reversed, holding that because the "ceramic[s] business had produced 'gross revenues greater than his average weekly wage at the time of the subject employment injury,' " Smith had undergone a change from temporary total disability to *no* disability. Id. This court reversed the superior court, holding that "the board acted properly in calculating the appellant's entitlement to further disability benefits on the basis of his net rather than his gross business earnings." Id. at 870.

*Smith* therefore addressed the improper use of *gross* earnings to disprove disability entirely, rather than the use of *net* earnings to argue total rather than partial disability, as Yang attempts to do here. The board's holding that Smith was partially rather than totally disabled was never challenged, because he was actually working although not producing income. His net income was used to calculate the amount of his disability payments, not the nature and extent of his disability.

Here, Yang's "wage-earning capacity" within the meaning of OCGA § 34-9-104 (a) (1) clearly has changed. Like Smith, he is actually working although the corporation for which he works is not presently producing income, and like Smith, his disability therefore is partial rather than total. Yang's choice to pursue a start-up venture of his own company and forgo personal income in order to reinvest his earnings into the company and his refusal of rehabilitation assistance in anticipation of his company's success do not alter the fact that his *capacity* for remunerative employment has been substantially demonstrated by his extensive travel, work, and other activities on behalf of his company. These decisions do, however, affect the calculation of his benefits and whether he underwent a change of condition for the better, as the ALJ correctly concluded.

The superior court is substantially limited in its power to overturn the decision of the board. OCGA § 34-9-105 (c) (1)-(5). "Absent a legal error, review by a superior court is confined to a determination of whether any evidence supported the decision of the appellate divi-

---

[3] No indication appears in *Smith* that the ceramics shop was incorporated; the opinion suggests instead that Smith *directly* received revenues but no net income from operating the business. The involvement of a corporation in the case before us substantially changes the meaning of both revenue and income; as the ALJ observed, "there is some evidence of some benefit flowing to Mr. Yang, as at times he had living expenses paid by the corporation." But we need not reach that issue, as *Smith* is inapplicable here for other reasons.

sion." (Footnote omitted.) *McCarty v. Delta Pride*, 247 Ga. App. 734, 736 (1) (a) (545 SE2d 117) (2001). The board's decision that Yang's condition had changed from total to partial disability is supported by some evidence, and it therefore should have been affirmed by the superior court.

*Judgment reversed. Eldridge and Ellington, JJ., concur.*

DECIDED MAY 31, 2002 —
RECONSIDERATION DISMISSED JULY 1, 2002 AND RECONSIDERATION DENIED
NOVEMBER 14, 2002

*Hamilton, Westby, Antonowich & Anderson, Andrew J. Hamilton, Eric S. Proser*, for appellants.
*Clements & Sweet, John F. Sweet*, for appellee.