## A03A0574. SHAW INDUSTRIES, INC. v. SHAW.
### (586 SE2d 80)

SMITH, Chief Judge.

We granted a discretionary application in this workers' compensation case in order to address the correct method of calculating temporary partial disability benefits under OCGA § 34-9-262 and Rules and Regulations of the State Board of Workers' Compensation, Rule 262 (a). This involves determining an amount which is two-thirds of the difference between the employee's average weekly wage prior to injury and "[t]he average weekly wage the employee is able to earn [thereafter]. . . ." Id. We must consider whether the statutory phrase "able to earn" refers only to the employee's gross salary after the injury or whether the post-injury wage may be adjusted by adding an amount to represent available post-injury work time which the employee missed for reasons unrelated to the employee's

compensable work injury. We conclude that the employer should have been allowed to present evidence of the employee's refusal of available post-injury work and that the board erred in declining to consider this evidence. We therefore reverse.

Claimant Judy D. Shaw sustained a series of cumulative trauma injuries to her hands and arms. The injuries arose out of and in the course of her employment with an original date of accident of November 5, 1998. She underwent multiple surgeries and was placed on work restrictions following each procedure. During some of the time that Shaw was working a light duty job, she earned less money than her pre-injury average weekly wage. The issue as to the correct method of calculating temporary partial disability benefits arose from these periods of light duty employment. The employer, Shaw Industries, Inc., calculated an amount of benefits due and tendered a payment.[1] Claimant Shaw challenged the method of calculation used by the employer and maintained that additional benefits were due.

The parties stipulated before an administrative law judge as to Shaw's pre-injury average weekly wage. The employer's claims adjuster explained that the employer's upward adjustment of Shaw's post-injury gross pay was to account for time missed from work for reasons unrelated to her compensable injury. In determining temporary partial disability benefits, the employer used the amounts resulting from its upward adjustments to the post-injury wages rather than the actual post-injury wages. Since the employer's method of computation reduced the gap between the pre-injury and post-injury wages, Shaw's benefits were reduced. Shaw maintained that this adjustment was improper and contrary to the holding in *West Point Pepperell v. Green*, 148 Ga. App. 625 (252 SE2d 55) (1979).

In *Green*, the average weekly wage the employee was able to earn after her injury was reduced by closure of the employer's plant. The employer argued that the employee would have lost this time from work had she been in her pre-injury job and that she therefore was not entitled to receive partial disability for the days she would not have been working even if she had not been injured. But this court rejected the employer's argument, noting that "the only method provided by the statute is to use the average weekly wage before and after the injury." Id.

In the present case, the ALJ interpreted *Green* as not permitting consideration of the reason the employee may have lost time from work. The ALJ's award required that Shaw's temporary partial disa-

---

[1] The employer did not pay temporary partial disability benefits to Shaw in a timely manner and indeed had paid nothing on March 5, 2001, when Shaw retained counsel. Due to this delay, Shaw was awarded penalties and attorney fees which are not challenged in this appeal.

bility benefits be determined by taking "two-thirds of the difference between the employee's average weekly wage prior to her injury and her gross salary after her injury without considering the reason the employee may have lost time from work." See also Board Rule 262 (a). The findings and conclusions of the ALJ were adopted by the appellate division and affirmed by the superior court.

In our view, the reliance below on *Green* is misplaced because that case is distinguished on its facts. In *Green*, the employee was unable to earn any amount while the plant was closed because no work was available. Therefore, under the circumstances of that case there was no difference between the zero actual wage earned while the plant was closed and the amount that the employee was "able to earn" during the closure. There was no reason in *Green* for this court to consider how the calculation would be affected when the post-injury wage is reduced because the employee does not accept available work for reasons unrelated to her compensable injury. But this case involves just such a situation.

An employee's ability to earn a wage involves two components: the availability of work and the employee's capacity, physically and mentally, to complete the work. This case differs from *Green* in that both of these components were present for the periods in dispute. The parties stipulated that, for the weeks in which Shaw's wages were adjusted upward in the employer's computation, Shaw had missed time from work for reasons unrelated to her injury when light duty work was available.

A determination of temporary partial disability under OCGA § 34-9-262 is judged by the employee's capacity for work, and an employer is not liable for wage loss where there is no diminution of earning capacity. *WAGA-TV, Inc. v. Yang*, 256 Ga. App. 224, 226 (568 SE2d 58) (2002). Disability benefits are intended to compensate an employee for a loss of earning capacity due to the work injury and not due to an employee's unwillingness to work. *Federated Mut. &c. Ins. Co. v. Whiddon*, 88 Ga. App. 12, 17 (3) (75 SE2d 830) (1953).

> And it is unreasonable to conclude a claimant is "able" to earn nothing merely because she earns nothing. . . . [U]nder the present statutory scheme, when a claimant is "able to earn" but is not earning, in the absence of any legislative guidance the employer may reasonably theorize, based upon proof of available jobs for which the claimant is qualified, what the employee is "able to earn." The legislature did not intend claimants to not work and thereby avoid a reduced benefit.

*Mountainside Med. Center v. Tanner*, 225 Ga. App. 722, 723 (484 SE2d 706) (1997).

A number of methods perhaps could be used to determine the amount an employee is "able to earn" post-injury. The method used by the employer in this case — beginning with the actual post-injury wages and adjusting for available and usual work time that the employee chooses to miss for reasons unconnected with the compensable injury — is one reasonable alternative. We do not here determine the sufficiency of the employer's evidence, nor do we declare this employer's method to be exclusive. But under the circumstances of this case, the board's refusal to consider the reasons for Shaw's lost time from work was based on an erroneous legal theory and had the effect of reducing the substantive rights of the employer under OCGA § 34-9-262.

While claimant Shaw contends that this interpretation is barred by Board Rule 262 (a) as well as by *Green*, we disagree. Rule 262 (a) provides, via permissive language, several alternative methods to calculate the wage an employee is able to earn after an injury.[2] While it does not acknowledge an adjustment such as we approve here, per-

---

[2] The history of Rule 262 is somewhat complex and documented only to a limited extent in the Appendix to Title 34 of the Code. According to the editor's notes, a revision effective July 1, 1997, added Rule 262 and numbered former Rule 262 as Rule 261. A second revision effective July 2, 1998, transferred the provisions of former Rule 261 to Rule 262 and added the reference to OCGA § 34-9-104 (a) (3), which in its turn refers to OCGA § 34-9-262. According to claimant Shaw, Rule 262 in a previous form contained language permitting the adjustment advocated by the employer here. But when a prior judicial interpretation of a workers' compensation statute has been made by the appellate courts, "no rule promulgated by the Board can change that interpretation or qualify it by imposing a limitation." *Pizza Hut Delivery v. Blackwell*, 204 Ga. App. 112 (418 SE2d 639) (1992). Regardless of previous versions of the rule, both OCGA § 34-9-262 and Rule 262 retain the "able to earn" language construed by this court in *Mountainside Med. Center*, supra.

Some additional light is shed on Rule 262 by the Mercer Law Review's annual survey of Georgia law for 1997. Bagley, Workers' Compensation, 49 Mercer L. Rev. 383, 405-407 (1997). According to the article, the board passed Rule 262 "[i]n direct response" to *Mountainside Med. Center*, supra, and "disagrees with *Tanner* in that the employer is not allowed to 'reasonably theorize' what the employee is able to earn." 49 Mercer L. Rev. at 406-407. As noted above, however, the board may not change by rule any prior judicial interpretation of a workers' compensation statute. *Pizza Hut Delivery*, supra. "The Board is a creature of the statute, and has no inherent powers and no lawful right to act except as directed by the statute. It may exercise its rule-making powers under and within the law, but not outside of the law or in a manner inconsistent with the law." (Citation and punctuation omitted.) *Holt Svc. Co. v. Modlin*, 163 Ga. App. 283, 285 (1) (293 SE2d 741) (1982). But because, as noted above, the language of Rule 262 is permissive rather than mandatory, we need not reach the issue of the board's rule-making authority.

When this opinion was originally issued, this footnote observed and questioned the statement in the article that "[t]he Board has the power to make rules that are *not consistent* with the Act" (emphasis supplied), 49 Mercer L. Rev. at 407, n. 179, citing *Holt Svc. Co.*, supra. The authors of the law review article vigilantly noted this comment in our opinion and by amicus brief provided this court with a copy of their original article, showing that the statement, as published, was the result of a printer's typographical error. The sentence in the law review article should have read, "The Board has the power to make rules that are *not inconsistent* with the Act." (Emphasis supplied.) We thank the authors of the law review article for their assistance in correcting this misapprehension.

missive language allows the consideration of methods other than those enumerated in the rule. See generally *Kraft, Inc. v. Abad*, 262 Ga. 336 (417 SE2d 317) (1992) (permissive language in OCGA § 9-11-41 (b) and Uniform Superior Court Rule 14 allows trial court other options in response to plaintiff's failure to appear).

"Where it affirmatively appears that the award is based upon an erroneous legal theory, and that for this reason the board has not considered all of the evidence in the light of correct and applicable legal principles, the case should be remanded to the board for further findings." (Citation and punctuation omitted.) *Ga. Power Co. v. Pinson*, 167 Ga. App. 90, 94 (3) (305 SE2d 887) (1983). The superior court erred in affirming an award predicated on a misreading of *Green*, supra. The case therefore must be remanded to the State Board of Workers' Compensation to determine the proper adjustment to the employee's post-injury wages and to permit computation of temporary partial disability benefits in a manner consistent with this opinion.

*Judgment reversed and case remanded with direction. Ruffin, P. J., and Miller, J., concur.*

DECIDED JULY 15, 2003 —
RECONSIDERATION DENIED JULY 30, 2003 — 

*Sponcler & Tharpe, Mark D. Newberry*, for appellant.
*Finn & Hurtt, Thomas M. Finn*, for appellee.
*Drew, Eckl & Farnham, Harold M. Bagley, Daniel C. Kniffen, John G. Blackmon, Jr., Katherine D. Dixon*, amici curiae.