A05A1050. JOHN W. ROOKER & ASSOCIATES v. PATTERSON.

(623 SE2d 258)

PHIPPS, Judge.

We granted John W. Rooker & Associates' application for discretionary appeal in this workers' compensation case in which its request for a reduction in benefits based on a change in its employee's condition was denied by the administrative law judge (ALJ), the appellate division of the State Board of Workers' Compensation (the "Board"), and the superior court. For the reasons set forth below, we affirm.

> In reviewing a workers' compensation award, both this court and the superior court must construe the evidence in the light most favorable to the party prevailing before the appellate division. It is axiomatic that the findings of the [Board], when supported by any evidence, are conclusive and binding, and that neither the superior court nor this

court has any authority to substitute itself as a fact finding body in lieu of the Board.[1]

Viewed in this light, the record shows that Larry Patterson worked as a heavy equipment operator for Rooker (the employer) when he was injured in 1996. He received injuries to his back resulting in surgery to fuse his spine after he was accidentally run over by a pickup truck. He had 30 years experience as a heavy equipment operator at the time of his injury. In 2001, Patterson received a workers' compensation award designating his injuries as catastrophic, and he began receiving total disability benefits.

In 2003, the employer sought to reduce his total disability benefits to partial disability benefits based on (1) Patterson's alleged return to work as a maintenance worker for an apartment complex; and (2) a change in Patterson's lifting restrictions and the alleged availability of jobs within those restrictions. The ALJ rejected the employer's arguments, and its decision that Patterson's benefits should not be reduced was affirmed without alteration by the appellate division of the Board and by the superior court.

1. The employer claims that this case should be remanded because the appellate division applied the wrong legal standard for change of condition when it reviewed the ALJ's decision. We disagree.

In Georgia, a change in condition for the better can be shown in more than one way.

[T]he term "change in condition" means "a change in the wage-earning capacity, physical condition, or status of an employee . . . , which change must have occurred after the date on which the wage-earning capacity, physical condition, or status of the employee or other beneficiary was last established by award or otherwise."[2]

When an employee's condition has improved to the point that no disability remains, the employer does not need to show that "work is available to [the employee]. Having recovered from the injury he received . . . , [the employee] is in the same position as every other member of the general work force."[3] The standard is different for "employees whose disability has lessened and who are, therefore,

[1] *Olde South Custom Landscaping v. Mathis*, 229 Ga. App. 316 (494 SE2d 14) (1997) (citation and punctuation omitted).

[2] *Jones County Bd. of Ed. v. Patterson*, 255 Ga. App. 166, 168 (564 SE2d 777) (2002) (citations omitted).

[3] *Pierce v. AAA Cabinet Co.*, 173 Ga. App. 463, 464 (326 SE2d 575) (1985).

capable of doing *some* work, but not the work they were capable of doing before they were injured."[4] In these cases, the employer must show:

> (1) a physical change for the better in the claimant; (2) an ability to return to work as a result of the physical change; and (3) the availability of work to terminate or decrease the loss of income resulting from work-related disability.[5]

In this case, the employer asserted a change in condition based on the latter test only and complains that the appellate division applied the first test in which an employee completely recovers to the facts before it. While the appellate division may have decided an issue not before it by analyzing the first test, it also applied the latter and correct test to the issue before it.[6] As a result, the employer was not harmed by the additional, unnecessary analysis.

2. Relying on our decisions in *WAGA-TV, Inc. v. Yang*[7] and *ABB Risk Mgmt. &c. v. Lord*,[8] the employer asserts that the ALJ, appellate division, and superior court misinterpreted the law regarding a change of condition based on a return to work.

In *Yang*, we held that the Board's decision that the employee's condition had changed from total disability to partial disability was supported by some evidence, and it therefore should have been affirmed by the superior court.[9] The evidence supporting the Board's decision was that the employee began his own production company and worked very actively for the company, performing "videotaping, photography, and post-production work for various films and commercials."[10] The ALJ determined that the employee had returned to work, justifying a reduction from temporary total to temporary partial benefits, even though he had not received any actual income from the corporation, and the appellate division agreed.[11]

In *Lord*, we held that the superior court erred by overturning the decisions of the ALJ and appellate division that an employee had returned to work, even though "the evidence presented could have

---

[4] Id. (emphasis in original).

[5] *Sadie G. Mays Mem. Nursing Home v. Freeman*, 163 Ga. App. 557, 559 (3) (295 SE2d 340) (1982).

[6] The appellate division held, "In addition, we find the employer/self-insurer has not proven the employee is physically or economically capable of returning to work and suitable light-duty work is available."

[7] 256 Ga. App. 224 (568 SE2d 58) (2002).

[8] 254 Ga. App. 88 (561 SE2d 225) (2002).

[9] 256 Ga. App. at 228.

[10] Id. at 224.

[11] Id.

supported a different finding by the ALJ and the appellate division. . . ."[12] The evidence supporting the Board's decision was that the employee went every day to a convenience store he owned and spent two to eight hours there. He carried boxes and trash to the dumpster, brought boxes of merchandise into the store from a storeroom, occasionally filled the juice machine, and helped customers operate the gas pumps. The superior court found that he had not returned to work because there was no evidence that he was paid and "at most, the evidence showed that, on a voluntary basis [the employee] helped out at the store."[13] We reversed the superior court based on the requirement that we "construe the evidence in the light most favorable to the party prevailing before the appellate division."[14]

The employer here argues that since the facts in *Yang* and *Lord* supported the conclusion that the employees had returned to work, and the facts in this case are similar, those opinions require the same result here. We disagree. Our opinions in *Yang* and *Lord* were grounded on the "any evidence" standard of review; they do not mandate the same result on similar facts. Indeed, in *Lord*, we noted that the facts could have supported a different result. The issue before us is whether, when viewed in the light most favorable to the employee, who prevailed before the appellate division, there is any evidence to support the finding that he had not returned to work.

We find that the following portion of the ALJ's order is supported by evidence in the record:

> The employer/insurer also attempted to carry its burden by showing that the employee had actually returned to work as a maintenance worker at an apartment complex. The evidence shows that the employee is a close friend of Ethelene Balenger, the Apartment Manager of Pines Apartments. The employee also has two daughters and grandchildren who live at the apartments. Balenger used to baby-sit the employee's kids when they were younger. The employee visits the complex on a regular basis and, on occasion, helps Balenger out around the property by performing small odd jobs and going to pick up items from the store. The employee has replaced faucets, changed doorknobs, checked the wiring on stoves and unstopped refrigerator wiring. The employee is not paid for the odd jobs but is paid gas money for driving to various stores. The gas payments have ranged

---

[12] 254 Ga. App. at 90-91.
[13] Id. at 90 (punctuation omitted).
[14] Id. at 91.

from $10.00 to $50.00 and total up to $100.00 over the course of the year. According to the employee and Balenger, the employee does not work for the apartment complex but, rather, helps out with small tasks when the regular maintenance workers are not available.

I . . . find that the employee has not actually returned to work as a maintenance worker. . . . The evidence confirms that the employee was not employed with the Pines Apartments and he was not earning money for performing any work. Because of his friendship with Balenger, the employee volunteers to perform odd jobs to help out. He is only paid a small amount for gas reimbursement.

As a result, the ALJ and the appellate division were authorized to conclude that the employee had not returned to work, and our opinions in *Yang* and *Lord* do not require a different result.

3. In its final argument, the employer asserts that it is entitled to a remand because the ALJ misstated significant testimony and a proper understanding of the evidence might have resulted in a different conclusion as to whether any of the ten jobs identified in a labor market survey by a rehabilitation supplier were suitable for the employee. We find no merit in this argument because even if the jobs had been suitable, the record supports the ALJ's conclusion that there was "no evidence that any of these jobs are actually available to the employee or that the employee was informed of the jobs."[15]

*Judgment affirmed. Andrews, P. J., and Mikell, J., concur.*

DECIDED NOVEMBER 17, 2005.

*Cohen, Cooper, Estep & Mudder, Harold W. Whiteman, Jr.*, for appellant.

*David E. Galler*, for appellee.

---

[15] See *Freeman*, supra; *Peterson/Puritan, Inc. v. Day*, 157 Ga. App. 827, 829 (278 SE2d 674) (1981) ("Where the availability of specific suitable work is not made known to the claimant, it can hardly be said to be available to her nor does it give her any opportunity to accept it or to refuse work unsuitable to her capacity.").